CASE No. 1087.

CHARLESTON v. OLIVER.

SAME v. SAME.

1. The City Court of Charleston, under the authority of an ordinance of that city, may give judgment for the amount of a license tax and penalty, or imprisonment for thirty days, in case of non-payment.
2. *State* v. *Hayne,* 4 *S. C.* 403, and *State* v. *Columbia,* 6 *Id.* 1, recognized and followed.
3. Words and phrases in a constitution should be interpreted according to their ordinary and popular meaning, unless the context requires a technical sense.
4. The provision in Article I., Section 20 of the constitution, that "no person shall be imprisoned for debt, except in cases of fraud," has no application to taxes, which are not a debt within the meaning of this section.
5. Power to a municipal corporation to make assessments on its inhabitants, or those who hold taxable property within the same, for the safety, convenience, benefit and advantage of the said city, does not authorize the imposition by such municipality of a license tax on business.
6. A statute, authorizing a municipal corporation to require payment for licenses from persons engaged in any calling, business or profession within its limits, does not violate Articles I., VIII. or IX. of the constitution of the United States, or Article I., Section 12, or Article II., Section 33, of the constitution of this State.
7. But such authority being conferred by a section of a statute whose title is "An act to regulate the assessment and taxation of personal property in the city of Charleston," such statute violates the constitutional provision contained in Article II., Section 20, that every act shall relate to but one subject, and that shall be expressed in the title, and, therefore, this section of the act had not the force of law.

Before PRINGLE, Recorder, Charleston, January, 1881.

These were two actions in the City Court of Charleston, brought by the city council of Charleston against W. J. Oliver to recover license fees, in the one case for publishing a daily paper, and in the other for job printing, and, also, in both cases, the penalties for non-payment, the complaint also demanding

imprisonment for thirty days if the judgment was not paid. Defendant demurred and answered as follows:

*First.* The defendant above named demurs to this complaint, because:

1. It is a criminal action, and not cognizable by complaint; and,

2. Criminal and civil proceedings cannot be combined in the same form of action as are set forth in the complaint; and,

3. The plaintiff hath no right to pass the ordinance of 17th December, 1879; and,

4. No assessment or notification thereof has been or is alleged to have been given to defendant; and,

5. A license is not a tax in Charleston city; and,

6. There is no imprisonment for debt in this State.

*Second.* The defendant, for answer to said complaint, says: That he never contracted with the plaintiff touching a license. He prays to be hence dismissed with his costs, &c.

The judgment of the court, rendered by Hon. W. Alston Pringle, recorder, was as follows:

The following statement of the law and facts covers the ground taken in both demurrers and the answers:

The allegation that the defendant is indebted to the plaintiff is a sufficient allegation that neither the license nor the penalty has been paid.

The legislature, by the act of 1st March, 1870, authorized the city council of Charleston to require payment for licenses from persons engaged in business in the said city. By another act of the same date, the legislature authorized the city council to impose imprisonment in the alternative for all violations of the city ordinances.

The ordinance of the city council, under which the defendant is liable for the payment of the licenses and penalties for which these suits are brought, imposes an imprisonment of not more than thirty days as an alternative in default of payment. There is no provision in the ordinances limiting the requirement for a license to persons employing more than one hand.

It has been already decided that the licenses required by the

ordinances of the city council of Charleston are taxes. *Cooley Tax.* 13–14.

Under this authority the defendant is liable for the amount of the licenses and the penalties, and, in default of payment, to an imprisonment of thirty days in each case, and the judgment should be so entered up.

Defendant appealed, in both cases, to this court, upon the following grounds :

1. Because, the demurrer should have been sustained for the reasons set forth therein, which are re-asserted.

2. Because the act of 1870, authorizing the city to require payment for licenses for " all trades and professions," is *unconstitutional* under Sections 20 and 33 of Article II., and Section 12 of Article I. of the State constitution, and Section- 10 of Article I., Articles I., VIII. and IX. of the United States constitution.

3. Because the ordinance of 17th of December, 1879, is *ultra vires,* in its prohibitory clause, of the act of 1870, which contains no prohibition ; is *illegal* in its requirements for license for want of any prohibitory act, and is *unconstitutional* under the foregoing sections of the State and United States constitutions, as well as under Section 20, Article I., of the State constitution.

4. Because, "All taxes  *  *  shall be considered and held as a debt payable to the city," by the fifty-second section of the city ordinance of 1870, and the demand sued for is styled " a debt " in the complaint.

5. Because the demand is not for taxes, but for penalties, which are " monetary obligations."

6. Because the act of 1st March, 1870, relates to the police powers of the city, and not to taxation, and if it relates to the latter it is unconstitutional, under the foregoing sections of the State and United States constitutions.

*Mr. W. M. Thomas,* for appellant.

*Mr. G. D. Bryan,* contra.

September 27th, 1881.  The opinion of the court was delivered by

McIVER, A. J.   These were proceedings instituted in the City Court of Charleston, for alleged violations of one of the ordinances of that city ; one for carrying on the business of publishing a daily newspaper without a license, and the other for carrying on the business of a job printer without a license. The recorder held that the defendant was liable in each of the cases " for the amount of the license and penalty, and, in default of payment, to an imprisonment of thirty days," and directed that judgment be so entered up. From these judgments the defendant appealed on various grounds, which are set out in the " case," by which questions are raised : 1st. As to the form of the action. 2d. As to the constitutionality of the act of 1st March, 1870, conferring power upon the city council to require the licenses in question. 3d. As to the power of the city council to pass the ordinance requiring the licenses. 4th. As to the right to impose imprisonment as a penalty for the non-payment of a license tax. 5th. As to the necessity for notice to the defendant of the imposition of the tax.

The constitution, Article IX., Section 8, provides that " the corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes ; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

By Section 7 of an act entitled "An act to regulate the assessment and taxation of personal property in the city of Charleston," approved 1st March, 1870, (14 *Stat.* 409,) it is provided that " the city council of Charleston is hereby authorized to require the payment of such sum or sums of money, not exceeding five hundred dollars, for license or licenses, as in their judgment be just and wise, by any person engaged or intending to be engaged in any calling, business or profession," &c.

By another act entitled "An act relative to the power of the city council of Charleston, to impose punishment for the violation of city ordinances," approved March 1st, 1870, (14 *Stat.* 382,) the city council of Charleston is " authorized to impose, for the violation of ordinances, imprisonment in the workhouse or jail, not exceeding thirty days, in addition or in the alterna-

tive to penalties now authorized to be imposed by ordinances of said city." In pursuance of these acts, the city council of Charleston passed an ordinance on the 17th December, 1879, by which all persons engaged in the occupations therein named, among which are those of publishing a daily newspaper and job printing, are required to take out a license therefor, and providing that any person who shall exercise any of the callings, or carry on any of the occupations named, without taking out such license, "shall, besides being liable to the payment for the license, be subject to a penalty of twenty per cent. of the amount of such license, to be sued for and collected in the City Court, or any other court of competent jurisdiction, or to imprisonment, not exceeding thirty days, as may be adjudged by the recorder."

The objection to the form of the proceeding, we regard as untenable. By Section 3 of Chapter 106, *Gen. Stat.* 498, the City Court is invested with jurisdiction of all causes arising under the ordinances of the city council of Charleston; and where, as in this case, no mode of enforcement is prescribed by the charter, we see no reason why the mode pursued in this case is not sufficient. 2 *Dill. Mun. Corp.*, § 344.

The next inquiry is as to the constitutionality of the act of 1870. The general question of the power of the legislature to impose a license tax, has been conclusively settled in the case of the *State* v. *Hayne*, 4 *S. C.* 403, where most of the constitutional objections raised in this case were considered and disposed of. This case was followed by the case of the *State* v. *Columbia*, 6 *S. C.* 1, in which it was held that the legislature could empower a municipal corporation to impose a license tax on persons following particular callings, or pursuing particular occupations, within the corporate limits of such municipality. So that we consider that many of the constitutional questions raised by the appellant in these cases, have already been adjudicated, and it is only necessary for us to refer to the cases, as we have done, in which these questions have been determined.

There are, however, two constitutional questions raised here which are not determined in those cases, and which it will be necessary for us now to consider: 1st. Whether the provision subjecting the person, who fails or refuses to pay his license tax,

to imprisonment, is in violation of Section 20, Article I., of the constitution, which declares that "no person shall be imprisoned for debt, except in cases of fraud," and, 2d, whether the city council of Charleston have been constitutionally invested with power to impose a license tax.

To determine the first question, it is necessary to inquire whether a license tax is a "*debt*" in the sense of the word as used in the clause of the constitution above cited. We do not think it is. In determining the construction of words or phrases in a constitution or statute, we are not required to confine our attention to the abstract, technical meaning of the word or words employed, but must look to their ordinary and popular meaning also. The object being to ascertain the intention of the framers of the constitution, which must be gathered from the words used, we must necessarily give to those words the sense in which they are generally used by those who framed and those who adopted the constitution, unless there is something in that instrument showing that the words in question were used in a different sense.

Chief Justice Marshall, in *Ogden* v. *Saunders*, 12 *Wheat.* 332, declares the rule on this subject to be "that the intention of the instrument must prevail; that this intention must be collected from its words; that its words are to be understood in that sense in which they are generally used by those for whom the instrument was intended." We may also look to "the object to be accomplished, or the mischief designed to be remedied or guarded against, by the clause in which the ambiguity is met with. When we once know the reason which alone determined the will of the law-makers, we ought to interpret and apply the words used in a manner suitable and consonant to that reason, and as will be best calculated to effectuate the intent." *Cooley Const. L.* 65.

Guided by these principles we do not think that there can be any doubt that the framers of the constitution and the people who adopted it designed to use the word "debt," in the clause under consideration, in its ordinary sense, and did not intend that it should be held to embrace taxes levied for the support of the government or any of its agencies. The manifest object was

to deprive the citizen of the power to have his fellow-citizen imprisoned for non-payment of his debt. This power, in the hands of private individuals, had long been a subject of discussion, and had been previously circumscribed by the enactment of the Insolvent Debtors' and Prison Bounds acts, which had no application to taxes, and the object of the clause in question, undoubtedly, was still further to limit this power by confining its exercise to " cases of fraud."

This view is fully sustained by the authorities. In *Cooley Tax.* 13, it is said : " Taxes are not debts in the ordinary sense of that term, and their collection will in general depend on the remedies which are given by statute for their enforcement. * * * The law abolishing imprisonment for debt has no application to taxes, the remedy for the collection· of which may include an arrest if the legislature shall so provide." Again, at page 414, the same writer says : "A municipal corporation, empowered to grant licenses and to impose a fee therefor, may lawfully make the failure to take out a license and pay the fee subject the offender to·the penalty of fine and imprisonment."

The next inquiry is whether the city council of Charleston have been constitutionally invested with power to impose a license tax. Municipal corporations possess no powers except such as are conferred, either expressly or by necessary implication, by the legislature, either in their charters or in some subsequent act. It is contended here that the power to impose a license tax can be derived from the provisions of the original charter of the city of Charleston, (*act of* 1783, 7 *Stat.* 97,) and, also, that it is expressly conferred by the seventh section of the act of 1st March, 1870, 14 *Stat.* 409, which has been above cited.

By the fourth section of the original charter the city council is " vested with full power and authority to make such assessments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit and advantage of the said city, as shall appear to them expedient." The first question, therefore, is, do these words confer the power to impose a license tax, or do they simply

confer the power to impose a tax upon property? for it is very obvious that the two things are essentially different. One is a tax on *persons*, while the other is a tax on *property*. In the one case there must be an assessment of the *value* of the thing to be taxed before the tax can be levied, while in the other case there is not only no necessity for an assessment, but it would be impracticable.

In Section 33, of Article II., of the constitution, it is provided that "all taxes *upon property*, real or personal, shall be laid upon the *actual value* of the property taxed, as the same shall be ascertained by an *assessment* made for the purpose of laying such tax." Section 1, of Article IX., declares that "the general assembly shall provide by law for a *uniform* and *equal* rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property," &c. Again, in Section 8, of Article IX., where provision is made for conferring the taxing power upon municipal corporations, it is declared that such taxes must be *uniform* "in respect to *persons* and *property* within the jurisdiction of the body imposing the same." These clauses contemplate two subjects of taxation—*persons* and *property*—in both of which the rule of equity or equality is required to be observed, but in only one—property—is such equity to be secured by an assessment of value, as that would not be applicable to the other. *State* v. *Hayne*, 4 *S. C.* 423.

Now the power conferred by the original charter upon the city council of Charleston was the power "to make such *assessments* on the inhabitants of Charleston, *or those who hold property* within the same," which plainly gave the power to tax property only and not *persons*, and therefore the power to impose a license tax cannot be derived from the original charter. This seems to have been the received opinion for many years, as otherwise there would have been no necessity for the seventh section of the act of 1st March, 1870, in which the legislature undertook to confer this power upon the city council. That this act does, in unmistakable terms, confer the power to impose a license tax, cannot be doubted; but it is contended that the seventh section

of the act of 1st March, 1870, is unconstitutional, and, therefore, has not the force of law.

Various objections have been urged to the constitutionality of this section, none of which are sustainable except the one based upon the provisions of Section 20, Article II., of the constitution, which provides that "every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." The section here in question is found in an act the title of which is "An act to regulate the assessment and taxation of personal property in the city of Charleston." It does not purport to be, and is not in fact, an act regulating *taxation* in the city of Charleston, but is confined, as its title imports, except in the section in question and one other, to the assessment and taxation of *personal property*. The question then is: Does this act relate "to but one subject?" and is that subject "expressed in the title?" and the practical inquiry is whether the subject—taxation of personal property—is the same as, or does it include, taxation of callings or occupations, usually denominated license taxes? That these two things are not the same, but, on the contrary, are essentially different in their nature, we have already seen, and we think it equally clear that the one does not include the other. If the title of this act had been an act to regulate taxation in the city of Charleston, then it is very clear that anything relating to the general subject of taxation might properly have been included in the act, and provision might have been made for levying taxes upon any or all the different subjects of taxation contemplated by the constitution. Such, however, is not the title of the act, but it is restricted to one branch of the two general subjects of taxation contemplated by the constitution—*personal property*.

Again, it will be observed that the title of this act is, not to *provide for*, but to *regulate* the assessment and taxation of personal property. This word implies the previous existence of the power to impose taxes on *one* of the subjects of taxation—property—and only pointed to a purpose to provide certain regulations as to the mode of exercising such a power. It certainly cannot be regarded as indicating a purpose *to confer a*

*new power* of taxation, by authorizing the taxation of *persons,* and it was therefore well calculated to mislead.

In *Cooley Const. Lim.* 143–4, the purpose of this and other similar constitutional provisions is said to be : " 1st, to prevent *hodge-podge* or ' log-rolling ' legislation ; 2d, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted ; and, 3d, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." This author, at page 149 of the same work, also says : "As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title ; they are vested with no dispensing power ; the constitution has made the title the conclusive index to the legislative intent as to what shall have operation ; it is no answer to say that the title might have been made more comprehensive, if, in fact, the legislature have not seen fit to make it so."

While, therefore, we think that there has been, and ought to be, a general disposition to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construction (*Cooley Const. Lim.* 146), and while we fully agree with the Supreme Court of the United States where, (*San Antonio* v. *Mehaffy,* 96 *U. S.* 315,) adopting the language of the Texas Court in *San Antonio* v. *Lane,* 32 *Tex.* 405, it holds that : " When an act of the legislature expresses in its title the object of the act, the title embraces and expresses any lawful means to achieve the object, thus fulfilling the constitutional injunction that every law shall embrace but one object and that

shall be expressed in its title," we cannot but regard the section of the act in question as being obnoxious to the constitutional objection which we have been considering.

The subject of the act, as expressed in the title, is the assessment and taxation of *personal property*, while the matter provided for by the seventh section is wholly different and has no relation to the subject expressed in the title. No one on reading the title of the act would for a moment suppose that the object was to confer a new and distinct power of taxation on the city council, by which a new and distinct subject of taxation was provided for, and it was very well calculated to mislead the people. It may be, when the people were informed by the title of the act that the object was merely to regulate the assessment and taxation of personal property, which had always been a subject of taxation, that they would have been content to leave that matter in the hands of their representatives; but if the title had informed them that the object was to confer an additional taxing power upon the corporation by creating a new and distinct subject of taxation, their apprehensions might have been aroused and they might have desired to be heard "by petition or otherwise." The power to impose a license tax was not at all necessary to the object expressed in the title, nor did it furnish any means by which such object could be best carried into effect. It was not even incidental to or in any way connected with it, but, on the contrary, was wholly distinct and independent. It is true that the legislature, under an act to regulate taxation in the city of Charleston, might have conferred the taxing power to the fullest extent authorized by the constitution, and might have provided any lawful means to render such power most effectual; but the legislature have not seen fit to adopt such a comprehensive title, and, on the contrary, have employed a much more restrictive one, and the court "cannot enlarge the scope of the title."

We are compelled, therefore, to declare that Section 7 of the act of 1st March, 1870, 14 *Stat.* 409, is in violation of Section 20, Article II., of the constitution of this State, and consequently there is no law authorizing the city council of Charleston

to impose the taxes which are sought to be enforced by these proceedings.

Under this view of the case the other questions suggested by the appeal cannot arise and need not therefore be considered.

The judgment of this court is that the judgment of the court below, in each of the cases, be reversed, and that the proceedings be dismissed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.