## ROSE v. HARLLEE.

1. EVIDENCE—CHATTEL MORTGAGE.—It is not necessary to introduce extraneous evidence to show that portions of a paper is printed and not written or typewritten, when the paper itself is put in evidence, as that is evident upon inspection.
2. CHATTEL MORTGAGES—CONSTITUTION—CONTRACT.—The act of 1901, Code 1902, 3002, providing that the description of property conveyed by chattel mortgage should be filled in in writing or typewriting, is not an arbitrary or unreasonable restraint on the right to contract, and not violative of the 14th amendment of the Fed. Con., nor of sec. 5, art. I., of the Constitution of this State.
3. ESTOPPEL—CHATTEL MORTGAGES.—A mortgagor is not estopped from denying the validity of a chattel mortgage by accepting advances under it.

Before GAGE, J., Florence, March, 1903.    Affirmed.

Action by H. S. Rose against H. T. Harllee.    From order granting new trial, plaintiff appeals.

*Messrs. Willcox & Willcox,* for appellant, cite: *As to constitutionality of the act:* Con. U. S., art. XIV., sec. 1; Con. S. C., art. I., sec. 5; 98 N. Y., 98; 127 U. S., 678; Code 1902, 3002; 37 Am. St. R., 206; 165 U. S., 578; 83 Am. St. R., 116; 152 U. S., 133; Cool. Con. Lim., ch. 16; 42 Am. R., 450; 37 Am. L. Rev., 139; 46 Am. St. R., 315; 129 U. S., 26; 127 U. S., 678; 29 L. R. A., 79; 83 U. S., 16; 40 L. R. A., 302.    *Defendant is estopped from denying validity · of mortgage:* Big. on Est., 2 ed., 514.

*Mr. J. P. McNeill,* also for appellant, cites: *Act deprives citizen of right to contract as he elects:* 17 L. R. A., 853; 32 L. R. A., 445; 22 L. R. A., 340; 52 Am. R., 34; 24 L. R. A., 702; 14 L. R. A., 325; 57 Am. R., 869; 7 L. R. A., 711; 6 L. R. A., 621. *Defendant is estopped from alleging illegality by acting under contract:* Big. on Est., 3 ed., 575; 76 Ill., 383; 32 Wis., 434.

*Messrs. S. W. G. Shipp, W. F. Clayton* and *George Galletly,* contra.

August 8, 1904. The opinion of the Court was delivered by

Mr. Justice Woods. The plaintiff and the defendant entered into a written agreement on March 18, 1902, which provided for advancement by plaintiff of agricultural supplies for the year 1902 and an agricultural lien on defendant's crop to secure them. The paper contained also the following mortgage clause:

"The party of the second part, in consideration of said agricultural advances, and in consideration of advances in merchandise, or supplies of any kind whatsoever which may be made by the party of the first part, and as security for the payment on the first day of October, 1902, of any amounts which the party of the second part may on said date for any cause be owing the party of the first part, and to secure the payment, at an earlier date, for such amounts as may be then owing, in case the party of the first part shall deem his security insufficient or in danger, and to secure the payment of any amounts which the party of the second part shall be owing the party of the first part until the cancellation of this agreement, does hereby mortgage, bargain, pledge, sell and convey to the party of the first part the following personal property, to wit: One red and white, no horn, ox, no name; one red and white horned ox, no name; one white and black horned ox, no name. Above stock is my own, and there is no other claim against them.

"Also, all crops to be raised on the plantation above described during the current year, all of which the party of the second part promises to deliver on demand of the party of the first part; said mortgage to be void only on payment of all amounts herein mentioned to the party of the first part."

On August 15, 1902, the plaintiff brought this action to recover the property described in the contract, including the crops, the complaint being in the ordinary form used in claim and delivery. The undertaking required by law was given and the property delivered to the plaintiff. The answer denied the right of the plaintiff to possession of the property, stated the value to be $2,500, instead of $1,000, as stated by plaintiff, and alleged the taking and detention of the plaintiff to be "wrongful, wilful, wanton, and in gross violation of defendant's legal rights," to his damage $5,000. Judgment was demanded for $5,000 as such damages, in addition to the $2,500 value of the property.

At the trial the plaintiff claimed the right to seize the crop under his mortgage as above quoted, because he deemed "his security insufficient or in danger."

Among other defenses, the defendant took the position that the mortgage was void as to the crops because they were described in print and not writing or typewriting. The presiding Judge charged the jury if they found the description to be printed and not in writing or typewriting, the mortgage would be absolutely void. This instruction was based on section 3002 of the Civil Code of 1902, which is as follows:

"No chattel mortgage shall be valid or good to convey any interest or right whatever to the mortgagee, unless the property mortgaged shall be described in writing or typewriting, but not printing, on the face of the mortgage, nor shall any prosecution lie for selling any property under the lien of such mortgage, unless the property mortgaged shall be described in writing or typewriting, but not printing, on the face of such mortgage."

There was no evidence of the description of the crop being printed except the appearance of the paper itself. The jury

found a verdict for the plaintiff, fixing the value of the property at $1,072. A new trial was ordered, on the ground that the verdict of the jury was in violation of the instruction of the Court. In his decree granting the new trial, the Circuit Judge says: "It is manifest from a casual inspection of the paper that it does not comply with the terms of the act." The plaintiff, by his appeal from this order, submits it should not have been granted, for three reasons:

First. Because there was no evidence that the description of the crops in the mortgage was printed, and not written or typewritten. Second. Because the act making the mortgage invalid, "unless the property mortgaged shall be described in writing or typewriting, but not printing, on the face of the mortgage," should have been held to be "unconstitutional, null and void, as being in contravention of the fourteenth amendment of the Federal Constitution and of section 5, article I., of the Constitution of 1895 of the State of South Carolina, in that it is an unreasonable restraint of the liberty of the citizens of the State to contract." Third. Because, even if the act is valid and if the description of the crop was printed, the defendant was estopped from disputing the validity of the mortgage by receiving advances from the plaintiff on the faith of the security.

In saying, "it is manifest from a casual inspection of the paper that it does not comply with the terms of the act," the Circuit Judge obviously meant that the jury could not fail to discern from an inspection of the paper that the description of the mortgaged property was printed.

When a paper is introduced, it is evidence of everything which its contents or appearance indicates to the jury as reasonable men. It is too plain for argument that when an individual is before them, the jury must, without the intervention of a witness, use the evidence of their own senses in deciding whether such individual is an adult or a child, or is black or white, or old or young, whenever such differences are material to the cause. So the appearance of a paper may be often the very best evidence on the point in

issue. For instance, if a party claims under an ancient deed, and offers as such a deed one freshly written on paper manifestly new, it would not be doubted for a moment that if the jury ignored the evidence furnished by the appearance of the paper, a new trial should be granted. The jury having disregarded the evidence furnished by the paper itself that the description of the property was printed in the mortgage, the order of the Circuit Judge granting a new trial cannot be reversed on the ground that there was no evidence of the description being printed and not written or typewritten.

We next consider whether the act is unconstitutional, as an unreasonable restraint of the liberty to contract. The right to contract is not absolute and unlimited, but is subject to such restrictions as the legislature may impose, provided such restrictions can be reasonably considered to be for the public safety, health, or morals. *Johnson* v. *Spartan Mills,* 68 S. C., 339; *Lawton* v. *Steele,* 152 U. S., 135. Neither the Constitution of the United States nor that of this State forbids the General Assembly to pass laws regulating the substance of contracts, the form in which they shall be made, and the manner of execution and attestation, if the regulation tends to protect the public or a class of individuals from fraud or unfair dealing. This proposition is so well established in both reason and authority that discussion is unnecessary. Examples are found in the statute of frauds, in the requirement that two witnesses shall attest a deed of real estate, and in the statutes against usury, and against dealing in various commodities on options and margins. *Otis* v. *Parker,* 187 U. S., 606; *In re House Bill 1230,* 40 N. E., 715 (Mass.); *Considine* v. *Insurance Co.,* 43 N. E., 203 (Mass.); 8 Cyc., 887.

The proposition urged upon the Court, however, by the plaintiff is that the statute now under consideration is nothing more than an arbitrary and whimsical attempt to limit the right of contract, and is, therefore, void. The statute was intended to protect the unwary from fraud and imposition,

and we think it is well adapted to that end. Printed forms of mortgages are now in general use, and the printed portions being usually regarded formal, receive little attention from the mortgagors before execution. On the other hand, whatever is written in the blank with pen or typewriter, will attract the attention of even the most confiding as expressing that which distinguishes his contract from others of like nature. When we consider, in connection with this fact, that a mortgage is valid with such general descriptions as "all my household furniture," or "all my crops on my lands," or "all my lands in South Carolina," and reflect how easy it is to print such expressions in blank forms which would apply to the property of one person as well as another, the opportunity for imposition and fraud, and the importance of the protection of the ignorant or unsuspecting, becomes apparent. The act is, therefore, not an arbitrary or unreasonable restraint on the right of contract, and is not unconstitutional.

The third position taken by plaintiff, that the defendant is estopped from denying the validity of the mortgage by accepting benefits under it, cannot be sustained. The act declaring such a mortgage invalid as to property described in printing and not in writing or typewriting, as we have seen, was passed for the protection of the public, and to hold that it could be defeated by estoppel would be to allow individual action to defeat the public policy of which the statute is the expression. After referring to numerous cases on the subject, the Supreme Court of the United States says: "They are substantially unanimous in expressing the view that in no way and in no channels, directly or indirectly, will the courts allow an action to be maintained for the recovery of property delivered under an illegal contract, where, in order to maintain such recovery, it is necessary to have recourse to that contract." *Pullman's Palace Car Co.* v. *Central Transportation Co.,* 171 U. S., 151, 43 L. ed., 114; *Brown* v. *Bank* (Ind.), 24 L. R. A., 211.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.