7930

## VERNER v. MULLER.

1. CONSTITUTIONAL LAW.—The act providing for free bridges between Richland and Lexington counties, 25 Stat., 1431, is not obnoxious to article III, section 17, of the Constitution, in that the title refers to the *acquisition* of bridges and the body authorizes the buying or building of bridges.

2. ELECTION—MANAGERS.—Under a statute providing for appointment of managers of a special election by the board of county commissioners, an appointment by the chairman, in the absence of evidence showing that the board did not approve or that there was not sufficient regular appointees to hold the election, no fraud or unfairness being alleged, is upheld.

3. IBID.—A POLLING PLACE opened in the country about a quarter of a mile from the point indicated in the statute as "at or near" the place of such precinct is *near* the point indicated. A mere irregularity not affecting the result will not vitiate an election.

4. IBID.—Under a statute authorizing the county board of commissioners to order a special election, appoint managers, canvass the return and declare the result, it is not proper to file a certificate with the secretary of state or the governor or to have the board of county canvassers canvass the returns.

5. BONDS—TAX—SINKING FUND.—That no tax has been levied to pay interest and to provide a sinking fund as provided in the act authorizing the issue of bonds is no ground for enjoining the issue. In this case the act confers such powers on the fiscal officers.

6. BRIDGES.—Whether the county commissioners could permit the use of the bridges to be established by Columbia township between Richland and Lexington counties by street or railway cars for compensation is not considered, because it does not affect the validity of the bonds issued to acquire the bridges, the proper parties are not before the Court and the bridges are not yet acquired.

Petition by James S. Verner and A. R. Taylor in the original jurisdiction of this Court for injunction against W. F. Muller, A. B. Campbell, J. E. Heise, L. M. Hook and Charles Kinsler, as members of the board of county commissioners of Richland county.

*Messrs. Weston & Aycock,* for petitioners.

*Messrs. Clarkson & Clarkson,* contra, cite: *As to the constitutionality of the act:* 74 S. C. 449; 76 S. C. 332; 77 S. C. 272. *As to the legality of the election:* 73 S. C. 398; 86 S. C. 425, 461. *Levying tax to meet interest is not a condition precedent to issuing bonds:* 85 S. C. 163. *Charging street cars a toll would not render the act unconstitutional:* 76 S. C. 332.

June 14, 1911. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The petitioners as taxpayers seek to enjoin the board of county commissioners of Richland county from issuing certain coupon bonds of Columbia township, in Richland county, about to be issued under alleged authority of the act of February 20. 1908, 25 Stat. 1431.

It is contended first that the act is in violation of section 17, article III, of the Constitution, providing: "Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

The title of the act is: "An act to provide for free bridges across the Congaree and Broad rivers in this State, between Columbia township, in Richland county, and the county of Lexington, the acquisition thereof by said Columbia township, and the issue of bonds, if approved by the electors of Columbia township, for the purpose of such acquisition." Section 7 of the act provides: "That authority is hereby given to build, or purchase, and to maintain said bridges," etc. The point made is that the title authorizes only the purchase or acquisition of bridges now standing, while the body of the act permits the construction of new bridges as well as the purchase of those now standing.

The mandate of the Constitution is complied with if the title states the general subject of legislation, and the pro-

visions in the body of the act are germane thereto as means to accomplish the objects expressed in the title. *Conner* v. *Railroad,* 23 S. C. 327; *State* v. *O'Day,* 74 S. C. 448, 54 S. E. 607. The provision in the body of the statute is not only germane to the subject expressed in the title, but is clearly within the meaning of the words of the title. "Acquisition" is the act of getting or obtaining something, which may be already in existence, or may be brought into existence through the means employed to acquire it. A bridge may be acquired by construction as well as by purchase. Moreover, the object was to provide free bridges. This contention cannot be sustained.

It is next alleged that the election was invalid because some of the managers were appointed by the chairman of the board of county commissioners, whereas the statute required the appointment to be made by the board. It appears that the board of county commissioners approved all the managers, and authorized the chairman to fill any vacancies that might occur, and that the chairman made some appointments to fill vacancies. There is nothing to show that the board did not approve the appointments made by the chairman under their authority. If we should concede that original appointment by the board was necessary, there is nothing to show that there were not sufficient appointees at each precinct to hold a legal election. No fraud or unfairness in the conduct of the election is suggested. An election fairly conducted by *de facto* officers may be valid. *Cox* v. *Wilson,* 73 S. C. 398; *Stackhouse* v. *County Board,* 86 S. C. 425, 68 S. E. 561.

It is also alleged that Waverly precinct, where votes were taken, was stationed at a point about one quarter of a mile from the fork of Rice Creek Spring and Camden Road, whereas section 203, Civil Code, provides that said voting place shall be "at or near" the said fork. We cannot say as matter of law that a country precinct

a quarter of a mile from the crossing of a stream and a road may not be characterized as located "near" such point. But it appears that the votes cast at Waverly precinct were 32 "for bonds," and 13 for "no bonds," and that the votes in the whole township were 453 "for bonds," and 82 for "no bonds." Hence the vote at Waverly could be thrown out without affecting the result. A mere irregularity not sufficient to affect the result will not vitiate an election. *Welsh* v. *Board,* 79 S. C. 246, 60 S. E. 699; *State* v. *Board,* 86 S. C. 461, 68 S. E. 676.

Another objection made against the legality of the election is that no certificate of the election was filed with the Secretary of State and the Governor by the board of county canvassers. The statute authorizing the election provides that the managers "shall conduct, direct and declare the result of said election and make returns thereof in writing to the said county board of commissioners," and further authorizes the said county board to issue the bonds, "if a majority of the votes cast at said election shall be for the issuing of bonds." The board of county commissioners had power to canvass the returns and declare the result. This was done. Out of abundance of caution the board of county canvassers also canvassed the returns, and made like declaration as to the result. There was no contest. Certificates of the findings of said boards were filed with the clerk of the Court of Common Pleas and General Sessions of Richland county, and a certificate of the county board of commissioners was tendered for filing with the Secretary of State, who declined to receive it on the ground that the law did not require the filing of the result of such an election with him. For this reason no certificate of the county board of canvassers was tendered for filing with the Secretary of State. But in this case it was not necessary to file the returns with the board of county canvassers; nor was it necessary for that board to file a certificate with the Secretary of State and the Gov-

ernor, as the act authorizing the special election provided a different method, which contemplated that the returns should be made to the board of county commissioners, and that such board should have authority to declare the result.

The issuance of the bonds is further opposed on the ground that there is no provision made for the levying of a tax with which to meet the interest and sinking fund requirements when the same shall become due on July 1, 1912. The statute provides: "Upon the issuance of said bonds, or any part of them, it shall be the duty of the officers charged with the assessment, levying and collection of taxes to levy and collect annually from all property, real and personal, within the limits of said township, a sum sufficient to pay the interest on said bonds, and also one-twentieth of the principal to constitute a sinking fund with which to retire the said bonds at maturity," etc.

We think this confers ample power for the assessment, levy and collection of the necessary tax; but if it did not, that would not constitute ground for enjoining the issuance of the bonds. *Welch* v. *Getzen,* 85 S. C. 163, 67 S. E. 294.

It is alleged that it is the purpose of the board of county commissioners to permit street or railway cars to use the bridges acquired under the provisions of said act upon payment of a reasonable toll by the owners of said cars, and it is sought to restrain the commissioners from so doing. Petitioners seek to have the Court construe the provision in section 8 of said act, requiring that said bridges "shall be open forever for the passage of all persons, animals, driven or ridden, and vehicles, not including street or railway cars, coming into or going out of Columbia township, free of toll or charge."

We would not undertake to determine in this proceeding whether street or railway cars may be absolutely excluded from the use of said bridges, or may be used upon the same upon the payment of reasonable toll. Such a question is

premature. The county commissioners as yet have not acquired any control over said bridges, and there can be no injury threatened in the premises warranting injunction. Our opinion on the subject would not be authoritative, in the absence of a real issue between proper parties. The matter in no way affects the right to issue the bonds in question.

Injunction is denied and the petition is dismissed.