**MILES LABORATORIES, Inc., v. SEIGNIOUS.**

No. 981.

District Court, E. D. South Carolina.

Dec. 15, 1939.

Buist & Buist, of Charleston, S. C., and Verne G. Cawley, of Elkhart, Ind., for plaintiff.

Stoney, Crosland & Pritchard, of Charleston, S. C., for defendant.

MYERS, District Judge.

This suit for injunctive relief arises under a South Carolina statute,

known as "The Fair Trade Act".[1] The statute, in effect, provides as follows:

That no contract relating to the re-sale of a trademarked commodity shall be deemed in violation of law because of either of the following provisions therein contained: (a) That the buyer will not re-sell at less than a fixed price; (b) that any purchaser from the original purchaser shall be required to maintain the price (with certain exceptions as to liquidation sales, damaged goods, and judicial sales); the statute further providing that the offering for sale, or selling, of any such commodity at less than the stipulated price by any person whomsoever, whether party to such a contract or not, is "unfair competition", and is actionable at the suit of any person damaged thereby.

This is an extension by state legislation of the protection given by Federal legislation to owners of patents and trademarks. With the wisdom of this policy, this court is not concerned; it is a legislative question. To the legality of the statute carrying this policy into effect, and the methods of enforcement thereof, this court now addresses itself.

Contracts made pursuant to such statutes seem to be known as "fair trade contracts"; the price established by such contracts apparently is referred to as the "fair trade price".

The plaintiff, the manufacturer of a trademarked product known as Alka-Seltzer, pleads diverse citizenship with the defendant and shows, in support of its claim of the existence of the jurisdictional amount, that, during a seven year period preceding the institution of this suit, it expended over thirteen million dollars in advertising its product, of which over eighty-eight thousand dollars was spent for, or is properly allocated to, advertising in South Carolina; that during the same seven year period it has sold the said product to an amount of over twenty-three million dollars, of which sales have been made in South Carolina of over sixty-five thousand dollars; that there are five hundred and eighty-eight retail drug stores in South Carolina, in a large number of which Alka-Seltzer is sold, and with one hundred and seventy-three of these the plaintiff has entered into "fair trade contracts". On the basis of these figures, the plaintiff asserts that its good will has a value in excess of five million dollars, and that its good will in South Carolina has a value in excess of five thousand dollars.

The plaintiff further shows that the contracts, into which it has entered as aforesaid, provide for a minimum resale price of the plaintiff's product; that the plaintiff has offered to enter into a similar contract with the defendant, who has refused to contract; that the defendant was duly notified of the existence of these so-called "fair trade contracts" and was duly notified of the minimum retail price of Alka-Seltzer under the terms thereof, but that thereafter the defendant sold Alka-Seltzer on several occasions at less than the said minimum re-sale price. Further allegations are made to the effect that the defendant's conduct will break down the plaintiff's price structure for its product, will induce breaches by other druggists of fair trade contracts, and will damage and reduce the value of the plaintiff's trademark and good will.

An answer was filed by the defendant, denying information as to the majority of the allegations of the complaint, but admitting that he had sold the product at less than the re-sale price fixed by contracts between the plaintiff and other druggists, and raising a number of constitutional questions that will be hereinafter discussed.

A pre-trial hearing was held, under the provisions of Rule 16, Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, at which the defendant admitted that he had no testimony to offer in disproof of any of the factual allegations of the complaint, and that he did not desire to contest them, and upon such admission the court without objection from either party entered an order herein dated January 30, 1939, that disposed of the factual issues of the case in favor of the plaintiff, and left open for consideration only the questions of constitutionality raised by the answer. On the basis of the admissions made by the defendant at the pre-trial hearing, the court now finds the facts in the case to be as pleaded by the plaintiff, and as above set out.

The economic philosophy of statutes such as this is interesting. While at first it might seem that price cutting by a retailer would not be particularly harmful to a manufacturer, yet, after hearing argument and

---

[1] Act April 23, 1937, Acts of Assembly 40 St. at Large, p. 301.

on more careful consideration it appears that there is respectable opinion to the contrary. The argument in support of this runs as follows: Protection against price cutting in drug products is necessary to enable the small volume druggist to secure a fair profit, and to maintain his competitive position with the drug store doing a large volume of business. Undoubtedly the corner drugstore is the economic unit most seriously affected by price cutting, yet it seems that the financial health and welfare of the innumerable small volume druggists dispensing a product to the public is a matter of serious interest to the manufacturer of such product. Moreover, the maintenance of a fair margin of profit encourages the retailer to offer a standard product of good quality to the public rather than to endeavor to substitute a sub-standard or inferior product in the effort to meet price cutting competition. This in turn affects the public weal. The Supreme Court of the United States has said in Old Dearborn Distributing Company v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 145, 81 L.Ed. 109, 106 A.L.R. 1476, "There is a great body of fact and opinion tending to show that price cutting by retail dealers is not only injurious to the goodwill and business of the producer and distributor of identified goods, but injurious to the general public as well". The rationale of permitting this price control of the trademarked product into the hands of the consumer is explained in the same case: "The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself. * * * The ownership of the good will, we repeat, remains unchanged, notwithstanding the commodity has been parted with. Section 2 of the act [Smith-Hurd Stats.Ill. c. 121½ § 189] does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates 'unfair competition.' "

To the same effect see the recent decision of the North Carolina court in Ely Lilly & Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528.

The opposing argument is that it is to the advantage of the public to purchase as cheaply as possible; that, if a trademarked product is forced into a free and unhampered market, competitive conditions will adjust the price to a fair figure; and that there is no sound reason for giving a competitive advantage to trademarked products by allowing price control that is not permitted as to other goods.

A solution of these opposing economic views is not necessary to the decision and is not undertaken by the court.

Upon the final hearing three primary questions of law have been presented to the court. The first of these is whether, after a pre-trial hearing under Rule 16, and an admission made at the hearing by a party that he does not contest certain issues of fact made by the pleadings, it is nevertheless incumbent upon the opposing party to offer testimony in support of these facts. The second is the question whether there is a sufficient allegation of jurisdictional amount. The third is whether the statute in question is in conflict with the Constitution of the State of South Carolina.

The question under Rule 16 arises by reason of the point made by the defendant at the trial that the case should be dismissed because of failure of the plaintiff to offer proof of its allegations of jurisdictional facts, regardless of the order entered upon the pre-trial hearing. One of the primary purposes of the Rules of Civil Procedure, recently promulgated, is to simplify practice in the Federal courts, and to eliminate the doing of useless things. It would certainly be a futile waste of time of both the court and the litigants if admissions made by the parties at pre-trial hearings were so meaningless that thereafter the parties must go forward and submit ritualistic proofs of uncontested facts. Such, in my opinion, is not the meaning of the Rule, and I construe the effect of the Rule as follows: When the parties to the cause, through their attorneys, come before the court for a pre-trial hearing, and an admission or agreement as to a factual issue is there made, and carried into effect by an order of the court, then, unless the order be modified thereafter by the court, that issue

554

stands as fully determined as if adjudicated after the taking of testimony. The admission is in substitution for proof. Thereafter, it is not incumbent upon either party to offer testimony as to any fact so determined at a pre-trial hearing, whether such fact be jurisdictional, or a fact on the merits. This procedure for determining facts, as established by this Rule, has superseded prior procedural requirements.

■ At the pre-trial hearing the defendant did not raise any question of jurisdiction, agreeing on the contrary that the only issues remaining in the case were the constitutional issues. However, the court is of opinion that a litigant is privileged to question the jurisdiction of the court at any stage of a case, and, therefore, it becomes the duty of the court to consider the jurisdictional attack made at the final hearing.

The jurisdiction is questioned on two grounds. First, that there is a failure to plead or prove that the admitted acts of the defendant in price-cutting have caused any damage to the plaintiff; and, if any damage, then there has been a failure to plead or prove damage in an amount in excess of three thousand dollars; and secondly, that, as this is a case solely for injunctive relief, and as the statute, by its terms, does not provide for such method of enforcement, the court has no jurisdiction to entertain a suit of this character.

■ It is quite true that the plaintiff makes no attempt by pleading or proof to evalue in money the damage to it by the five sales of Alka-Seltzer made by the defendant, each at a few cents under the so-called "fair trade price". Nor does the plaintiff contend that these five sales did cause monetary damage to it in excess of three thousand dollars. However, it is a firmly established principle of law that when a litigant seeks an injunction to protect a right, and shows that some invasion of that right has occurred, or been threatened, the test of the jurisdictional amount is the value of the right that is to be protected, and not the extent of the monetary loss or damage that has been suffered or is threatened by the invasion.[2] The reasons for this rule are so obvious, and have been so frequently pointed out in the cases cited, that further discussion of them here can add nothing to what has previously been said.

■ The factual allegations of the complaint as to the amount in controversy are directed to that principle of law. They seek to show the value of the right of the plaintiff to sell its product in South Carolina, and to realize upon the value of its goodwill therein established, all of which it claims is threatened with disruption by the price-cutting activities of the defendant. The court has no difficulty in reaching the conclusion, from the vast amount spent by the plaintiff in advertising and the resulting substantial volume of sales of its product, that the value of its right to distribute this product to the public in South Carolina is substantially in excess of the jurisdictional amount.

■ The position of the defendant, aside

[2] Scott v. Donald, 165 U.S. 107, 17 S. Ct. 262, 41 L.Ed. 648; Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821; Bitterman v. Louisville & Nashville R. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann. Cas. 693; Berryman v. Whitman College, 222 U.S. 334, 32 S.Ct. 147, 56 L. Ed. 225; Glenwood, etc., Co. v. Mutual, etc., Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174; Western & A. R. R. v. Railroad Commission of Georgia, 261 U.S. 264, 43 S.Ct. 252, 67 L.Ed. 645; Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596; Southern Express Co. v. Mayor, etc., of Ensley, C.C., 116 F. 756; Hutchinson v. Beckham, 8 Cir., 118 F. 399; Humes v. City of Little Rock, C.C., 138 F. 929; Board of Trade v. Cella Commission Co., 8 Cir., 145 F. 28; Evenson v. Spaulding, 9 Cir., 150 F. 517, 9 L.R.A.,N.S., 904; American Smelting & Refining Co. v. Godfrey, 8 Cir., 158 F. 225, 14 Ann.Cas. 8; Jewel Tea Co. v. Lee's Summit, Mo., D.C., 198 F. 532; Prest-O-Lite Co. v. Bournonville, D.C., 260 F. 440; Local No. 7 v. Bowen, D.C., 278 F. 271; Lambert v. Yellowley, 2 Cir., 4 F.2d 915; Mutual Oil Co. v. Zehrung, D.C., 11 F.2d 887; Carmichael v. Anderson, D.C., 14 F.2d 166; Sun-Maid Raisin Growers, etc., v. Avis, D.C., 25 F.2d 303; St. Louis Southwestern Ry. Co. v. Emmerson, 7 Cir., 30 F.2d 322; Del Monte, etc., Co. v. California, etc., Corp., 9 Cir., 34 F.2d 774; Wisconsin Electric Co. v. Dumore Co., C.C., 35 F.2d 555; Station W.B.T. v. Poulnot, D.C., 46 F.2d 671; Harvey v. American Coal Co., 7 Cir., 50 F.2d 832; Great Atlantic & Pacific Tea Co. v. A. & P. Cleaners & Dyers, D.C., 10 F.Supp. 450; Household Finance Corp. v. Household Finance Corp., D.C., 11 F.Supp. 3; Calvert Distilling Co. v. Brandon, D.C., 24 F.Supp. 857.

from the question of the existence of the jurisdictional amount, that the court is without power to administer the equitable relief of injunction unless some monetary damage to the plaintiff be shown, is entirely unsound. Not only is an invasion of a right, unaccompanied by monetary damage, sufficient to invoke this power of the court of equity, but even a threatened wrong, that has not actually occurred, is sufficient. Swift & Company v. United States, 276 U. S. 311, 48 S.Ct. 311, 72 L.Ed. 587; State of New York v. State of Illinois, 274 U.S. 488, 47 S.Ct. 661, 71 L.Ed. 1164; Standard Oil Co. of Maine v. Standard Oil Co. of New York, 1 Cir., 45 F.2d 309. State ex rel. Lyon v. Columbia Water Power, 82 S.C. 181, 63 S.E. 884, 22 L.R.A.,N.S., 435, 129 Am.St.Rep. 876, 17 Ann.Cas. 343.

In the first case, supra, Mr. Justice Brandeis, speaking for the court, says [276 U. S. 311, 48 S.Ct. 315, 72 L.Ed. 587]: "The argument ignores the fact that a suit for an injunction deals primarily, not with past violations, but with threatened future ones; and that an injunction may issue to prevent future wrong, although no right has yet been violated."

Not only is the absence of monetary damage not a reason for denying injunctive relief, but on the contrary it supports an application for such relief. The fact that there has been no monetary damage accompanying the invasion or threatened invasion of a right, or that the monetary damage is trivial, evidences the inadequacy of a remedy at law; and the inadequacy of a legal remedy is a prerequisite to equitable relief. Therefore, the trivial or non-existent character of the monetary damage to the plaintiff, by reason of the five sales of Alka-Seltzer made by the defendant, shows the helplessness of the plaintiff to obtain adequate legal redress, and it is to the effect of those sales upon the plaintiff's right to do business, particularly the future effect of those sales and other prospective sales, that the court must look.

The question of whether the statute can be enforced by injunction is not strictly a jurisdictional question, but is more a question of remedy. The statute itself is silent as to remedy, beyond saying that the "unfair competition", as therein defined, "is actionable at the suit of any person damaged thereby".

A statute normally creates or defines a right, it may or may not provide a remedy; but the courts are never powerless to enforce a right because of doubt as to the nature of a just remedy. The entire process of injunction in equity, and in fact the courts of chancery themselves, first grew out of the inability of courts of common law of England to grant appropriate relief in certain cases, thereby suggesting to litigants, who were possessed of a right without a remedy, to apply to the King for relief; and thereupon the King delegated to his chancellor the power to grant equitable remedies, including injunction. When any right exists, and a proper showing is made that the possessor of that right is without adequate remedy at law, he has the privilege of seeking equitable relief, and this is true regardless of whether the right has its origin in the common law, or in a statute. The power to administer injunctive relief stems back to the peculiar origin and development of the courts of chancery; it is not ordinarily a statutory grant of power to the court.

But while no authority within the statute is necessary for the administration of such relief, yet, in this statute it so happens that the legislature has indicated that such relief is intended. It defines certain conduct as "unfair competition" and when it used those words, it used words that have a technical meaning. It has long been recognized that injunction is a proper remedy against unfair competition: Coca-Cola Co. v. Old Dominion Beverage Corporation, 4 Cir., 271 F. 600; Price-Hollister Co. v. Warford Corporation, D.C., 18 F.2d 129; Standard Oil Co. of Maine v. Standard Oil Co. of New York, 1 Cir., 45 F.2d 309.

When the legislature used the words "unfair competition", it in effect said that in enforcing the statute the usual remedies against the unfair competition were to be administered by the courts.

The constitutional questions under which the validity of the statute has been attacked are three in number: all under the South Carolina Constitution; none under the Federal Constitution. The first is an attack under Article 1, Section 5, that is the "due process of law" section. The second is an attack under Article 3, Section 17, that is the "one subject, expressed in the title" section. The third attack is under Article 9, Section 13, that denounces trusts, etc., against the public welfare.

The attack under the due process clause (Article 1, Section 5) has been aban-

doned by the defendant. The original contention was that there was a violation of this clause because the statutes made the contracts signed by the plaintiff with third parties applicable to the defendant who had not signed any such contract. Clearly this was an erroneous assumption, because it is not under the contracts that the plaintiff asserts the right to protect its products from price-cutting, but it is under the statute. It is seeking to enforce a statutory right, and not a contract right. The contracts made with third parties merely establish a minimum price, and no other term of such a contract is applicable to a person who has not signed it. The minimum price so established is applicable to all persons whom the statute, in its state-wide application, can reach. The statute merely restrains all persons from making sales of a character that the legislature considers contrary to public policy; and sales of many kinds are subject to legislative control: narcotics, lottery tickets, food products, alcohol, wild game, etc. There is no constitutional right to sell to the public free of legislative control. Clearly there is no violation of the due process clause.[3]

 The attack under Article 3, Section 17, relies upon the wording of the Constitution reading: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

The title of the Fair Trade Act of South Carolina reads: "An Act to Protect Trade Mark Owners, Distributors and the Public Against Injurious and Uneconomic Practices in the Distribution of Commodities Under a Distinguishing Trade Mark, Brand or Name."

The assertion is made that the title fails to indicate power in the trademark owner to fix the price of his commodity at retail, that it does not indicate that a person who has not signed a contract with the trademark owner is bound by the statute or is subject to suit; and that the act relates to more than one subject.

The constitutional section drawn into question here has been construed in a large number of cases. These cases are quite uniform to the effect that the object of the constitutional provision is to prevent deception of the public and that, if the general subject of the legislation is expressed in the title, the details, the means, the methods, or the instrumentalities by which the object is to be attained need not be indicated, provided they are germane to the general subject of the legislation. In one case it is said that the title should not be an index of the contents of the statute. If the title gives a fair intimation of the subject of the legislation it is sufficient.[4]

Examining the statute in the light of this principle of law it is obvious that the title indicates that the statute relates to practices in the distribution of trademarked commodities. That is sufficient to inform a person reading the title that "distribution practices" are something that are to be affected by the Act. Price policy is certainly within the scope of the expression "practices in distribution". It seems to the court that the title is an entirely fair statement of the general purpose of the Act, and that there are no details of the statute that are not germane to the main purpose of permitting a price control over trademarked products until they come into the hands of the ultimate consumer. By the same process of reasoning the conclusion is reached that the statute, in its primary purpose of permitting control over the trademarked product until it reaches the ultimate consumer, is concerned with only one subject, and that the methods prescribed by the Act for accomplishing that control are details of working out the primary intent of the legislature on the subject. The conclusion follows that there is no violation of Article 3, Section 17 of the South Carolina Constitution.

3 Old Dearborn Distributing Co. v. Seagram-Distillers Corporation, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476; Rose v. Harllee, 69 S.C. 523, 48 S.E. 541; Miller v. Atlantic Coast Line Railroad Co., 90 S.C. 249, 73 S.E. 71.

4 Charleston v. Oliver, 16 S.C. 47; Floyd v. Perrin, 30 S.C. 1, 8 S.E. 14, 2 L.R.A. 242; Barksdale v. Laurens, 58 S.C. 413, 36 S.E. 661; Southern Power Co. v. Walker, 89 S.C. 84, 71 S.E. 356; Verner v. Muller, 89 S.C. 117, 71 S.E. 654; Lillard v. Melton, 103 S.C. 10, 87 S.E. 421; Furman v. Willimon, 106 S.C. 159, 90 S.E. 700; Robinson v. City of Columbia, 116 S.C. 193, 107 S.E. 476; McKiever v. Sumter, 137 S.C. 266, 135 S.E. 60; Briggs v. Greenville County, 137 S.C. 288, 135 S.E. 153; State ex rel. Farr v. Moorer, 152 S.C. 455, 150 S.E. 269; Alley v. Daniel, 153 S.C. 217, 150 S.E. 691.

■ The third attack is under Article 9, Section 13, of the Constitution, that provides: "The General Assembly shall enact laws to prevent all trusts, combinations, contracts and agreements against the public welfare."

It will be observed that the Constitution in mandatory language directs the Legislature to enact laws to prevent all trusts, etc., against the public welfare, without attempting to define within the constitutional provision what trusts, etc., are against the public welfare. The direction is not to enact laws against all trusts, combinations, contracts and agreements, but only against those which are against public welfare. In the absence of a constitutional definition of what trusts, etc., are against the public welfare, the Constitution leaves to the Legislature the discretion of determining what trusts, combinations, contracts and agreements are to be so considered. When the Legislature finds a trust or a contract to be against the public welfare, this section commands the Legislature to enact a law to prevent it, but when the Legislature finds that a trust or a contract is not against the public welfare, this section of the Constitution does not touch it.

In argument it has been urged that this court shall undertake to say that Fair Trade contracts are against the public welfare, and, therefore, that it was the duty of the Legislature to enact laws preventing them; but this the court will not undertake to do, as it is the legislative, and not a judicial, function to determine what contracts are, and what are not against the public welfare. The court does construe the plaintiff's Fair Trade contract to be in accord with the Fair Trade Act. The Legislature by enacting the statute has announced that it considers contracts made in accord with it to be pro bono publico. The court does not undertake to pass on the wisdom of the Legislature in enacting the statute.

■ Another approach in argument to the application of this section of the Constitution to the statute under consideration proceeds in this manner. The Legislature has heretofore enacted a statute that is now Section 6620 of the South Carolina Code that in general terms complies with the said Constitution provision. The position is taken by the defendant that, having enacted Section 6620 prohibiting trusts, combinations, etc., it is now beyond the power of the Legislature to enact the Fair Trade Act, and that, as the Fair Trade Act is in conflict with, or creates an exception to, Section 6620 of the Code, the Fair Trade Act is void.

The court does not agree with this position. When a Legislature acts pursuant to a mandatory constitutional direction, it does not thereby exhaust its powers, but may from time to time amend, extend, or restrict the original enactment provided it keeps within the constitutional bounds. It may change its mind as to what is the public welfare; public policy itself changes from decade to decade. Nor does a conflict between two statutes necessarily have the effect of rendering one of them void, although sometimes it might be difficult to construe the statutory law in the face of two conflicting enactments. In this instance, however, there is no insuperable conflict between the two acts; it is readily possible to construe them in harmony with each other, and both within the limits of the constitution. The Legislature has determined that, in general, trusts, agreements, contracts, combinations, etc., designed to advance, reduce or control prices should be considered against public welfare and they are prohibited, but in the case of trademarked commodities an exception is made under which the owner of the trademark is permitted to control the price of his product under certain conditions until it reaches the ultimate consumer, thereby announcing that the Legislature has reached the determination that a contract providing for such price control is not contrary to the public welfare. The wisdom of this policy is a matter for the Legislature and not for the court, and the Legislature has spoken. As to the logic of the policy, the court finds nothing illogical in it. The statute in question is not violative of Article 9, Section 13, of the South Carolina Constitution.

■ The court, therefore, is of opinion that the admitted acts of the defendant in cutting the price of the plaintiff's trademarked product are violative of the South Carolina statute known as the Fair Trade Act; that the actions of the defendant threaten irreparable damage to the plaintiff; that the plaintiff has no adequate remedy at law, and is entitled to the injunctive process of this court for its protection. A decree for permanent injunction is being filed contemporaneously with this opinion.