### 8067

### MILLER v. ATLANTIC COAST LINE RAILROAD CO.

1. REPEAL OF STATUTES—RELIEF DEPARTMENTS—MASTER AND 'SERVANT.—
   AN ACT is not repealed by a general repealing clause in a subsequent
   statute covering the same subject unless by express terms, which is
   not favored in law.
   The act of 1903, 24 Stat. 97, is not repealed by the act of 1905, 24
   Stat. 962, both relating to the regulation of relief departments of
   employees.
2. POLICE POWER—IBID.—CONSTITUTIONAL LAW.—THE ACT OF 1905, 24
   STAT. 962, is not an arbitrary exercise of the police power and applies
   to a relief contract entered into before the passage of the act, but
   the injury occurring after its passage.
3. CONTRACTS—IBID.—IBID.—THE ACTS of 1903 and 1905 are not obnox-
   ious to the 14th amendment of the Federal Constitution or to sec. 5,

art. I of the State Constitution, as an unreasonable interference with the right of contract when applied to a relief contract made before injury.

Before PRINCE, J., Sumter, November, 1910.    Reversed.

Action by James A. Miller against Atlantic Coast Line Railroad Company, James W. Sellers, William Rhett and William Woods.    Plaintiff appeals.

*Messrs. Best* and *Cunningham, L. D. Jennings* and *John H. Clifton,* for appellant.    *Messrs. Best & Cunningham* cite: *Right of legislature to regulate contracts: State* v. *Mullins,* 87 S. C.    .    *Validity of this statute:* 131 Ia. 341; 172 U. S. 552; *State* v. *Mullins,* 87 S. C.    ; 115 U. S. 463; 169 U. S. 133; 113 U. S. 27; 151 U. S. 556; 183 U. S. 13; 212 U. S. 545; 123 U. S. 623; 136 U. S. 313; 191 U. S. 207. *Legislature may determine what public policy requires:* 187 U. S. 609; 190 U. S. 169; 127 U. S. 256.    *Act of 1903 is not repealed by act of 1905:* End. on Int. of Stat., sec. 250; 68 S. C. 411; 14 Rich. L. 247; Suth. on Stat. Con., secs. 133, 134, 156;  79 Cal. 463; 50 Neb. 127; 79 Am. St. R. 149; 26 Am. St. R. 63; 157 U. S. 57.

*Messrs. P. A. Willcox* and *Lucian W. McLeMore* and *Henry E. Davis,* contra, cite: *The nature of defendant's relief department and the trend of judicial opinion as to it:* 8 At. 206; 3 Elliott on R. R., secs. 1381-2, 1384; 10 At. 237; 23 At. 307; 58 N. W. 1120; 37 N. E. 423; 29 At. 854; 30 At. 492; 33 L. R. A. 493; 62 N. W. 314; 35 L. R. A. 507; 70 N. W. 630; 66 Am. St. R. 456; 38 L. R. A. 750; 76 Fed. 439; 65 Fed. 305; 55 S. C. 152; 44 L. R. A. 698; 43 At. 908; 84 N. W. 90; 59 L. R. A. 291; 64 L. R. A. 405; 35 S. E. 82; 77 N. E. 248; 107 N. W. 1005; 95 N. W. 344; 97 N. W. 831; 104 N. W. 1066; 40 So. 394; 1 L. R. A. 75; 36 Fed. 655; 71 Fed. R. 136, 139, 931; 118 Fed. 92; 9 Q.

.B. Div. 357; 2 Q. B. 482; 65 Fed. 305; 49 N. E. 582; 53 N. E. 290; 3 Elliott, sec. 1383; 91 A. S. R. 445; 42 S. E. 239; 80 S. C. 167; 41 Fed. 125; 166 Fed. 850; 179 Fed. 128; 58 N. E. 866; 74 Ind. 942; 45 So. 761; 82 N. E. 471; 75 At. 1010. *The act of 1903 is repealed by the act of 1905:* Black on Int. of L. 116; Endl. on Int. of Statutes, sec. 250; 69 S. C. 322. *The act of 1903 is void as denying defendant the equal protection of the laws:* 165 U. S. 150; 73 S. C. 71; 63 S. C. 425. *The act of 1905 is not retroactive in effect:* 36 Cyc. 1201, 1180; 21 S. W. 788; 34 S. C. 468; 55 S. C. 295; 60 S. C. 1. *If construed as operating retroactively the act of 1905 impairs the obligation of contracts:* 102 U. S. 203; 106 U. S. 124; 6 Cranch 87; Cool. Con. Lim. 385, 404, 410, 411; 8 Cyc. 931, 932, 993. *It is an unreasonable interference with the right of private contract:* 165 U. S. 150, 578; 198 U. S. 45; 208 U. S. 161; 123 U. S. 623; 152 U. S. 133; 22 Ency. 938-9; 8 Cyc. 865; 50 A. S. R. 443; 91 A. S. R. 938; 98 A. S. R. 325; 95 A. S. R. 241; 142 Ill. 80; 141 Ill. 171; 46 A. S. R. 315; 44 L. R. A. 698; 31 A. S. R. 533; 80 S. C. 167. *This act should not be included under the police power:* 123 U. S. 623; 152 U. S. 133; 46 Am. St. R. 325; 22 Am. R. 71; 50 Am. R. 636; 4 A. S. R. 465; 52 A. S. R. 365; 76 A. S. R. 30; 50 Am. R. 636; 63 A. D. 391; 57 L. R. A. 895; 41 L. R. A. 481; 9 Mich. 285; 77 A. S. R. 765. *The relief department contract cannot be prohibited by the police power:* 55 S. C. 152: 62 S. C. 469; 80 S. C. 189. *Constitutionality of the act of 1905:* 179 Fed. 26; 1 Ohio 213; 7 Ohio N. P. 606; 71 Fed. 931; 80 S. C. 167; 166 Fed. 850; 55 Ohio St. 497; 152 Ind. 345; 71 Fed. 931; 1 Ohio N. P. 213; 50 Ohio St. 497; 152 Ind. 345; 62 S. C. 469.

December 21, 1911.    The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, on the 18th

of October, 1909, in the discharge of his duties as engineer, while in the employment of the defendant Atlantic Coast Line Railroad Company, through its negligence and wantonness.

The defendants denied the allegations of negligence and wantonness, and set up the defense, that the plaintiff and said railroad company, entered into a contract, whereby it was agreed, that the plaintiff should become a member of its relief department, and receive a specified sum in case of injury, which sum when accepted by the plaintiff, should operate as a release of all claims against the railroad company, arising out of said injury. That the plaintiff, in pursuance of said contract, accepted the sum to which he was entitled, as a member of the relief department, and thereby released the railroad company, from all further liability for said injury.

The plaintiff, replying to this defense, alleged that the said contract was null and void, and in contravention of the act, entitled: "An act to regulate and fix the liability of railroad companies having a relief department, to its employees," approved the 23d of February, 1903, and which was as follows: "That from and after the approval of this act, when any railroad company has what is usually called a relief department for its employees, the members of which are required or permitted to pay some dues, fees, moneys or compensation to be entitled to the benefits thereof; upon the death or injury of the employee, a member of such relief department such railroad company, be, and is hereby, required to pay to the person entitled to the same; the amount it was agreed the employee or his heirs at law should receive from such relief department; the acceptance of which amount shall not operate to estop, or in any way bar the right of such employee, or his personal representatives, from recovering damages of such railroad company, for injury or death caused by the negligence of such company, its agents or servants, as now provided by law; and

any contract or agreement to the contrary shall be ineffective for that purpose."

Also of the act entitled: "An act to fix and declare the liabilities of any corporation, firm, or individual operating a relief department, to employees, and to regulate the operation of the same," approved the 7th of March, 1905, and which was as follows:

Section 1. "That when any corporation, firm or individual runs or operates what is usually called a relief department for its employees, the members of which are required or permitted to pay fees, dues, money or other compensation, by whatever name called, to be entitled to the benefit thereof, upon the death or injury of the employee, a member of such relief department, such corporation, firm or individual, so running or operating the same, be, and is hereby, required to pay to the person entitled to the same the amount it was agreed the employee, his heirs or other beneficiary under such contract, should receive from such relief department; the acceptance of which amount shall not operate to estop, or in any way bar the right of such employee or his personal representatives, from recovering damages of such corporation, firm or individual, for personal injury or death caused by the negligence of such corporation, firm or individual, their servants and agents, as are now provided by law; and any contract or agreement to the contrary, or any receipt or release given in consideration of the payment of such sum, is and shall be null and void.

Sec. 2. "That all acts inconsistent with this act are hereby repealed."

It appears from the testimony, that the plaintiff became a member of the relief department, on the 19th of November, 1904, and was still a member when he accepted the amount hereinbefore mentioned. The several drafts delivered to the plaintiff, by the relief department, after he sustained said injury (omitting dates and amounts), contained these words: "This amount is in payment of benefits for

accident disability, for.......... days from ..........to
.........., inclusive, and is paid and accepted under the
regulations of the relief department."

At the close of the testimony, the defendants made a
motion for the direction of a verdict, on the ground "that
the acceptance by the plaintiff, of the benefits under the relief
department contract, operates as a bar, and as a complete
defense to the action, the acceptance of such benefits, hav-
ing operated as a full release, satisfaction and accord, of any
right of action, that the plaintiff might otherwise have."

His Honor the presiding Judge sustained the motion, and
assigned the following reasons for his ruling:

(1) Because the act of 1903 was repealed by the act of
1905.

(2) Because the act of 1905 was passed subsequent to the
time, when the plaintiff had become a member of the relief
department, and that it was, therefore, inapplicable to the
facts of this case, and,

(3) Because the acts of 1903 and 1905, were in violation
of the Fourteenth Amendment of the Federal Constitution,
which provides, that "no State shall make or enforce any
law, which shall abridge the privileges or immunities of
citizens of the United States; nor shall any State deprive
any person of life, liberty or property, without due process
of law; nor deny to any person within its jurisdiction, the
equal protection of the laws;" also, that the said acts were
repugnant to section 5, article I, of the State Constitution,
(which contains a provision in similar language), on the
ground that they were an unreasonable restraint upon the
liberty of contract.

The plaintiff appealed from an order directing a verdict,
and the first question that will be considered is, whether his
Honor the presiding Judge erred in ruling, that the act of
1903, was repealed by the act of 1905.

The act of 1903 was intended, to apply solely to railroad
companies, while the act of 1905 was intended, not only to

embrace railroad companies, but "any corporation, firm or individual." This is the only difference in the two acts, except a slight variance in their phraseology.

It is true, the act of 1905 contains the provision, that all acts inconsistent with it, are repealed, but it can not be successfully contended, that the act of 1903, is inconsistent with it, since all the provisions of the first, are included within the second act. Therefore, the act of 1903, was not repealed in express terms, and if repealed at all, it was merely by implication.

Repeals by implication, however, are not favored, and, in this case, such a rule can not be successfully invoked. *Buchanan* v. *State Treasurer,* 68 S. C. 411, 47 S. E. 683.

The exception raising this question is sustained.

The next question for consideration is, whether the presiding Judge was in error, when he ruled, that the act of 1905, was inapplicable, for the reason that it was approved after the plaintiff and the defendant railroad company, had entered into the contract, whereby the plaintiff became a member of its relief department.

This act was intended to have a prospective effect in these cases, where its provisions were violated after its passage; and, the fact that the contract, out of which such violations arose, was made before the act went into effect, does not prevent it from being applicable. The police power is paramount to the liberty of contract; and, when it is determined in a particular case, that a statute is not an attempt to exercise that power arbitrarily, then it can not be successfully contended, that it is an unreasonable restraint upon the liberty of contract.

The following language used by the writer of this opinion, in the case of *Sturgiss* v. *Ry.,* 80 S. C. 167, 60 S. E. 939, throws light upon the evil, which the act of 1905 was intended to remedy, and shows that it was not an attempt to exercise the police power, in an arbitrary manner.

"The statute under consideration (act of 1905) was enacted for the purpose of preventing railroad corporations (and other parties therein mentioned) from inaugurating schemes, the ultimate aim and practical effect of which, are to enable the railroad company to bring such influence to bear upon its employees, as will force them to surrender their claims for damages, when they have sustained injury through the negligence of the company, against which it is not allowed by law to contract.

"When the regulations of the hospital and relief fund are analyzed, it will be seen that they contemplate the result just mentioned.

"Not only do they provide that the employee who has paid his assessments, and thereby contributed to the creation and maintenance of said fund, shall be barred from recovering damages for negligence, if he accepts the benefit thereunder, but they likewise provide that his representatives, shall not be allowed to bring an action for damages, caused by the negligence of the corporation, if they accept the benefit of said fund.

"Membership in the hospital and relief fund, creates the relation of trustee and *cestui que trust,* between the company and the employee, and, although the employee is assessed to maintain the fund, he is not allowed to receive a dollar of the money collected for that purpose, unless he surrenders his claim for damages, when he has been injured through the negligence of the corporation. The fiduciary relation established between the company and the employee, places him practically at the mercy of the corporation; for it is a well known fact, that the employees are not persons, generally, of large means, and frequently are dependent entirely upon their salary or wages for a support.

"What is the condition of the employee, when he is injured through the negligence of the company? He realizes the fact, that he has a beneficial interest in a trust fund, and being in need of the money, he is anxious to get it. He

is informed, however, that he must surrender all other.
claims against the corporation. At this time he, perhaps,
is suffering great mental and physical pain, his mind is not
so clear as when in health, and the opportune time contem-
plated by the corporation has arrived, when he can be easily
persuaded to relinquish his claim for damages arising out of
negligence.

"Public policy demands, that the corporation shall not
have the opportunity of taking advantage of its employees,
through the fiduciary relations established between them,
with that end in view.

"We only desire to say, in conclusion, that if the hospital
and relief fund is successfully operated, the practical result
will be, that the railroad company will be enabled to liqui-
date claims for damages arising out of its negligence, with
sums of money contributed, in the main, by its employees—
an indirect way of contracting against its negligence."

To the same effect is the following language of the Court,
in *McGuire* v. *Ry.*, 131 Iowa 340: ·

"The average railway employee is not a man of wealth.
More often than otherwise, his total possessions, if any, are
represented by a modest home, and he depends upon his
wages, to meet his current living expenses. If he has a fam-
ily, they, too, are dependent upon his earnings. If severely
injured, the pain from his wounds, the anxiety for his
dependent family, the prssure of his immediate needs, are
not conducive to calm and business-like reflection, upon
what may prove to be a matter of great importance to him
and those, who look to him for support. The immediate aid
which the relief department offers may, under such cir-
cumstances, assume an exaggerated importance to his eyes,
and in his weakness and distress, lead him to accept a bene-
fit inferior to that, which he might otherwise be entitled to
recover. Moreover, the legislature may well have believed,
that while membership in the relief department was entirely
voluntary, in the legal sense of the word, it was still possi-

17—90

ble for the employer, by making the tenure of service more secure to those who became members, to bring to bear an influence in that direction, savoring of moral coersion."

These views are recognized in the case of *Holden* v. *Hardy*, 169 U. S. 366, in which the following language is used:

"The legislature has also recognized the fact, which the experience of legislators in many States has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are, to a certain extent, conflicting. The former naturally desire to obtain as much labor as possible from their employes, while the latter are often induced by the fear of discharge, to conform to regulations which their judgment, fairly exercised, would pronounce to be detrimental to their health or strength. In other words, the proprietors lay down the rules, and the laborers are practically constrained to obey them. In such cases self-interest is often an unsafe guide, and the legislature may properly interpose its authority. But the fact that both parties are of full age and competent to contract, does not necessarily deprive the State of the power to interfere, where the parties do not stand upon an equality, or where the public health demands, that one party to the contract, 'shall be protected against himself.' The State still retains an interest in his welfare, however reckless he may be. The whole is no greater than the sum of all the parts, and when the individual health, safety and welfare are sacrificed or neglected, the State must suffer."

The case of *McGuire* v. *Ry.*, 219 U. S. 549, 31 Sup. Ct. Rep. 259, shows that the act of 1905 can not be construed as an arbitrary exercise of the police power; and, that the fact that the contract was made before its passage, does not render it inapplicable in this case.

The exception raising this question is sustained.

The last question to be determined is, whether the presiding Judge erred in ruling, that the said acts were obnox-

ious to the fourteenth amendment of the Federal Constitution, and to section 5, article I of the State Constitution, on the ground that they are an unreasonable interference with the right of contract.

Before proceeding to determine this question, we desire it understood, that the proposition whether the provisions of said acts would be regarded as in restraint, of the right of contract, if parties enter into a new and independent contract, subsequent to the injury, but during the time the injured party is a member of the relief department is not before the Court, and, of course, will not be adjudicated.

The very able opinion of Mr. Justice Hughes in *McQuire* v. *Ry.*, 219 U. S. 549, is conclusive of the question now under consideration; and, as this Court must conform its decisions to those of that Court on Federal questions, we will quote somewhat at length from the opinion in that case, as follows:

"The acceptance of benefits is, of course, an act done after the injury, but the legal consequences sought to be attached to that act are derived from the provision in the contract of membership. The stipulation which the statute nullifies, is one made in advance of the injury, that the subsequent acceptance of benefits shall constitute full satisfaction of the claim for damages. It is in this respect that the question arises as to the restriction of the liberty of contract. * * *

"There is no absolute freedom to do as one likes, or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision, that wide department of activity, which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions, imposed in the interest of the community. * * *

"The right to make contracts is subject to the exercise of the powers granted to Congress, for the suitable conduct of matters of national concern. * * *

"It is subject also, in the field of State action, to the essential authority of government, to maintain peace and security, and to enact laws for the promotion of the health, safety, morals and welfare of those subject to its jurisdiction. * * * The principle involved in these decision is, that where the legislative action is arbitrary, and has no reasonable relation. to a purpose, which it is competent for government to effect, the legislature transcends the limits of its power, in interfering with the liberty of contracts; but, where there is reasonable relation to an object within the government authority, the exercise of the legislative discretion, is not subject to judicial review. * * * If the legislature may require the use of safety devices, it may prohibit agreements to dispense with them. If it may restrict employment in mines and smelters, to eight hours a day, it may make contracts for longer service unlawful. In such case the interference with the right to contract, is incidental to the main object of the regulation, and if the power exists to accomplish the latter, the interference is justified, as an aid to its existence. * * *

"Having authority to establish this regulation, it is manifest that the legislature was also entitled to insure its efficacy, by prohibiting contracts in derogation of its provisions. In the exercise of this power, the legislature was not limited, with respect either to the form, of the contract, or the nature of the consideration, or the absolute or conditional character of the agreement. It was as competent to prohibit contracts, which on a specified event, or in a given contingency, should operate to relieve the corporation from the statutory liability, which would otherwise exist, as it was to deny validity to agreements of absolute waiver. * * *

"If the legislature could specifically provide, that no contract for insurance relief, should limit the liability for dam-

ages, upon what ground can it be said that it was beyond the legislative authority, to deny that effect to the payment of benefits, or the acceptance of such payment under the contract? The asserted distinction is sought to be based upon the fact that under the contract of membership the employee has an election after the injury. But this circumstance, however, appropriate it may be for legislative consideration, cannot be regarded as defining a limitation of legislative power. The power to prohibit contracts in any case where it exists, necessarily implies legislative control over the transaction, in spite of the action of the parties. Whether this control may be exercised in a particular case, depends upon the relation of the transaction to the execution of a policy, which the State is competent to establish. It does not aid the argument, to describe the defense as one of accord and satisfaction. The payment of benefits, is the performance of the promise to pay contained in the contract of membership. If the legislature may prohibit the acceptance of the promise, as a substitution for the statutory liability, it should also be able to prevent the like substitution of its performance."

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.

MR. JUSTICE WOODS *concurs on the authority of Mc-Guire* v. *B. & L. R. R. Co.*, 219 U. S. 549, 55 L. ed. 328.