6822

STATE EX REL. PARLER v. STATE BOARD OF CANVASSERS.

ELECTIONS—NEW COUNTIES—CONSTITUTIONAL LAW.—If those electors
residing in the territory proposed to be cut from an old into a new
county, whose polling precincts are without the proposed new county,
added to those against the new county would not change the result, this
Court will not consider if the statute providing for formation of new
counties is unconstitutional in that it makes no provision for such
electors to cast their ballots.

Petition in original jurisdiction of this Court by A. R.
Parler et al. against State Board of Canvassers for writ of
certiorari.

Messrs. Herbert & Wolfe, for petitioners.

Messrs. Bellinger & Welch, contra.

March 24, 1908.  The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY.  This is a proceeding in certiorari,
for the purpose of determining whether there was error on
the part of the State Board of Canvassers in declaring that
the result of the election was in favor of Calhoun County.

Prior to the election, a petition was addressed to this
Court, in the exercise of its original jurisdiction, to prevent
the holding of the election, which was refused for the reason
stated in the opinion of the Court, delivered by Mr. Justice
Woods.  (Parler v. Fogle, 78 S. C., 570.)

The findings of fact by the State Board of Canvassers
were as follows :

"The election under the Constitution of this State to form
the proposed new county was held on the 17th day of De-
cember, 1907.  The result of the election in the Orangeburg
territory was 556 votes in favor of the formation of the new
county, and 99 votes against the formation thereof.  In the
Lexington territory the result of the election was 47 votes

in favor of the formation of the new county and 12 votes against the formation of the same. No contest was made as to the vote in the Lexington territory, and accordingly the vote and the result therein is declared as follows:

"Yes, that is in favor of the formation of the new county, 47 votes.

"No, that is against the formation of the new county, 12 votes.

"We find that the vote in the Lexington territory is over two-thirds of the qualified electors voting in the said territory at said election, and we declare the result in favor of forming said new county.

"The result of the election in Orangeburg territory was contested before the county board of canvassers, upon the grounds appearing in the record herein. The county board. after hearing the testimony offered for and against said protest, and argument on both sides, found as follows:

" 'We find some irregularities in several boxes, such as voting outside of right precincts, not demanding proper proof of payment of taxes, etc., but we find that there are not enough of such irregularities to change the result of this election.

" 'We further find that about sixty-five or more qualified electors, residing within the area of the proposed new county of Calhoun, including portions of Orange, Goodbye and Poplar townships, were deprived of the constitutional right to vote in this election, as the said electors are residents of the proposed new county while their voting places are without, and the act of the Legislature relating to the formation of new counties does not provide the means or the opportunity to vote in such cases.

" 'We, therefore, find that in depriving these qualified electors of the right to vote, the constitutional provision has been violated, and on this ground, we do hereby declare this election null and void.'

"From the finding of the county board, both sides have appealed to this Board, upon the grounds appearing in the

record. We have heard full argument on both sides and find as follows:

"*First.* That only sixty-four persons who resided in the Orangeburg portion of the territory taken to form the new county, were unable to vote at said election because of their voting places being outside of the said territory, and there being no provision of law for their voting at a voting place inside of the same.

· "If it be admitted that these voters are qualified electors, in the sense of the Constitution, and were, therefore, entitled to vote in the election, still the result thereof, in favor of the formation of said new county was so overwhelming, that if all of said voters would have voted against the formation of the same, the result of said election would not have been changed or affected or rendered at all doubtful. For these reasons the finding and decisions of the said county board declaring the said election null and void is overruled and reversed, and the election in the Orangeburg territory taken to form said new county is declared in favor of the formation of said new county by a vote of over two-thirds of the qualified electors voting in said election.

"*Second.* We further find that if all other irregularities and illegalities complained of existed, still the result of the election in the Orangeburg territory would not be changed or affected, or rendered at all doubtful, and this we find would still be true if all votes contested as illegal or irregular which were in favor of the formation of said new county were deducted from the vote in favor thereof, and were all other claims of voters made by the contestant as to those who would have voted against the formation of said county, allowed and added to the sixty-four voters referred to in the foregoing paragraph.

"*Third.* We hereby find and declare the said election in favor of the formation of said new county as follows: In the Orangeburg territory: Yes, 556; No, 99. In the Lexington territory, Yes, 47; No, 12.

"*Fourth.* We find in the territory taken from each of the old counties, Orangeburg and Lexington, over two-thirds of the qualified electors voting in said election voted in favor of the formation and creation of the said new county, and we declare the result of the election, accordingly, in favor of the formation of the said new county."

The ground upon which the county board of canvassers declared the election null and void was that certain residents within the territory of the proposed new county, but whose voting places were not within said area, were deprived of their constitutional right to vote.

The State Board of Canvassers overruled this objection on the ground that the result of the election would not have been changed if the votes of all such electors had been counted against the formation of the proposed new county.

The vital question in the case is, whether this ruling was erroneous. Article II, Section 9, of the Constitution is as follows: "The General Assembly shall provide for the establishment of polling precincts, in the several counties of the State, and those now existing shall so continue until abolished or changed. Each elector shall be required to vote at his own precinct, but provision shall be made for his transfer to another precinct, upon his change of residence."

Article VII, Section 1, requires that after the filing of the proper petition, "the Governor shall order an election, * * * by the qualified electors, within the proposed area."

Section 576 of the Code of Laws is as follows: "For the purposes of such election, the commissioners of election for each old county proposed to be cut, shall appoint three managers for each voting place in the area of the old county proposed to be cut off, not more than two of whom shall be in favor of the proposed new county or against it, and shall deliver to them the books of registration for those voting places, which the registration officers shall turn over to the commissioners on demand. Such election shall be conducted in the same manner as general elections in this State, and all persons

27—79

entitled to vote under the Constitution and laws of this State at general elections shall be entitled to vote at such election."

It is always a delicate matter to pass upon the constitutionality of an act of the Legislature, and the courts do so only when it becomes necessary in determining the rights of litigants.

The Court in *Ex parte Florence School,* 43 S. C. 11, 15, 20 S. E., 794, uses this language: "It is a well settled and salutary rule, that a court should never undertake to pass upon the constitutionality of an act of the Legislature—an ordinate branch of the government—unless it is necessary to the determination of the case in which such a question is presented."

The Court in *Trimmier* v. *Bomar,* 20 S. C., 354, 361, thus states the rule: "In elections the great matter is the result. When this is clearly ascertained, it sweeps away all technicalities. The machinery provided should be observed, but, in so far as it is not necessary to determine the result, it is directory and not mandatory. Certainly manner and form should not be allowed to defeat the undoubted will of the people clearly expressed. This would be, indeed, subordinating and sacrificing the substance to the shadow."

The principle is thus stated in *Bowers* v. *Smith,* 111 Mo., 54, 61: "If the law itself declares the specified irregularity to be fatal, the courts will follow that command, irrespective of their views, as to the importance of the requirement. *Ledbetter* v. *Hall,* 62 Mo., 422. In the absence of such declaration, the judiciary endeavor as best they may, to discern whether the deviation from the prescribed form of law had or had not such a vital bearing on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return, otherwise, it is considered immaterial. It has been sometimes said, in this connection, that certain provisions of election laws are mandatory and others directory. These terms may, perhaps, be convenient to distinguish one class of irregularities from the other. But, strictly speaking, all

provisions of such laws are mandatory, in the sense that they impose the duty of obedience on those who come within their terms.

"But it does not, therefore, follow that every slight departure therefrom should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end, and in order not to defeat the main design, are frequently led to ignore such irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voter's choice."

Section 577 of the Code of Laws provides that "a decision of the Board of State Canvassers shall be final and conclusive evidence, of the result of the election, on all questions of fact."

Therefore, there can be no doubt as to the question of *fact,* that if all the electors residing within the territory of the proposed new county, but whose polling precincts were outside had voted, the result of the election would not have been changed. In view of the facts in this particular case, these electors have not shown that it is necessary to pass upon the constitutionality of the statute in order to protect their right to take part in the election.

This ruling practically disposes of all questions in the case.

An order dismissing the proceedings has already been filed.