### McKIEVER *ET AL.* v. CITY OF SUMTER *ET AL.*

#### (135 S. E., 60)

1. Constitutional Law.—To warrant holding of statute unconstitutional, invalidity should appear beyond a reasonable doubt.

2. Constitutional Law.—Every presumption must be indulged in favor of the constitutionality of an act.

3. Statutes—Act Authorizing Cities to Sell Light and Ice Plants and to Contract With Purchaser Held to Relate to Only One Subject Expressed in its Title (Act March 14, 1925 [34 St. at Large, p. 155]; Const. Art. 3, § 17).—Act March 14, 1925 (34 St. at Large, p. 155), entitled "An act to authorize cities to sell and dispose of lighting and ice plants," which incidentally authorized city to contract with purchaser for electric current and ice, *held* not violative of Const. Art. 3, § 17, requiring act to relate to but one subject expressed in its title.

4. Statutes.—Const. Art. 3, § 17, requiring act to relate to but one subject expressed in its title, should be reasonably and liberally construed so as to guard against abuses aimed at, but not to embarrass or obstruct legislation.

5. Statutes.—Const. Art. 3, § 17, is complied with if title expresses a general subject and if body of act provides means, methods, or instrumentalities intended to facilitate accomplishment of the general purpose.

6. Statutes.—Act March 14, 1925 (34 St. at Large, p. 155), authorizing cities to sell lighting and ice plants, *held* not violative of Constitution as special legislation, on theory that it could relate only to one city, being general in its terms.

7. Statutes.—A law is general in the constitutional sense if applicable uniformly to all members of any class of persons, places, or things requiring peculiar legislation in matters covered by it; "general law."

Note: Rule as to sustaining constitutionality of statute, see 25 R. C. L., 1000; 3 R. C. L. Supp., 1437; 4 R. C. L. Supp., 1615; 5 R. C. L. Supp., 1358.

Provision limiting statute to one subject expressed in title liberally construed, see 25 R. C. L., 837; 4 R. C. L. Supp., 1604.

As to when law general in constitutional sense, 25 R. C. L., 816; 4 R. C. L. Supp., 1603; 5 R. C. L. Supp., 1347.

8. ELECTIONS.—Notice of election on question whether city should sell light and ice plant, which directed voters' attention to proposed contract with purchaser on file in city clerk's office, *held* sufficient under Act March 14, 1925 (34 St. at Large, p. 155), authorizing sale, and requiring notice to "contain, in substance, the terms of the offer."

9. ELECTIONS.—Where statute requires notice to state purpose of election, it must be substantially complied with, or election will be invalid, unless it is one which would not be vitiated by entire want of notice.

10. ELECTRICITY.—Act March 14, 1925 (34 St. at Large, p. 155), authorizing cities to sell lighting and ice plants, *held* to authorize city to contract with purchaser to furnish light and power and to give franchise for such purpose; Civ. Code 1922, § 4715, being repealed so far as inconsistent.

11. STATUTES.—Act March 14, 1925 (34 St. at Large, p. 155), construed as authorizing city to grant franchise to purchaser of lighting and ice plant, *held* not invalid as attempt to amend city's charter by special act.

Before WILSON, J., Sumter, January, 1926. Judgment reversed, injunction dissolved, petition dismissed, and judgment given City on the controversy without action, and case remanded with instructions.

Suit by J. W. McKiever and others against the City of Sumter and others, consolidated with a controversy without action between the City of Sumter and the Yadkin River Power Company. From a decree enjoining the City from making an intended conveyance and granting a franchise, the City and others appeal.

The following are the exceptions:

"I. That his Honor, the presiding Judge, erred, it is respectfully submitted, in holding that the City of Sumter, acting through its Council, had not the authority and power to grant the franchise and make the conveyance referred to in the pleadings herein, for the reason that such power and authority were delegated to and vested in the said City Council by the Act of the General Assembly of March 14,

1925 (Statutes 1925, p. 155), and the election and proceedings had and done under the authority thereof.

"II. That his Honor, the presiding Judge, erred, it is respectfully submitted, in not holding and finding that the said Act of March 14, 1925, was a constitutional enactmnet as against the attack based upon the ground that the body of the Act related to more than one subject which was not expressed in its title, for the reason that the body of the said Act did not relate to more than one subject, and for the further reason that the title to said Act fairly expressed its subject and object.

"III. That his Honor, the presiding Judge, erred, it is respectfully submitted, in not holding that the Act of March 14, 1925, was constitutional, as against an attack based upon the ground that it constituted special legislation in violation of the Constitution of South Carolina, for the reason that the said statute is a valid enactment, and does not constitute special legislation, and should have been upheld on this ground.

"IV. That his Honor, the presiding Judge, erred, it is respectfully submitted, in not holding and finding that, in submitting the proposed sale of the electric light and power plant and ice plant to the people of Sumter, the City Council thereof fully complied with the terms of the said Act of March 14, 1925, as against the attack based upon the ground that the notice of said election did not state in substance the terms of the offer, the said error being that the said notice of election did state in substance the terms of the offer in question and did constitute a full and legal compliance with the said statute.

"V. That his Honor, the presiding Judge, erred, it is respectfully submitted, in not finding and holding that any insufficiency which might have existed in the notice of election amounted to a mere irregularity, not affecting the result, and did not vitiate the election, for the reason that, it appearing that the electorate of the City of Sumter were fully informed

as to the terms of the offer and that the result of the election was not affected by the alleged insufficiency in the notice thereof, and that there is no allegation or claim that any one was misled or not fully informed as to the terms of sale, his Honor should have held that the alleged failure to comply strictly with the terms of the statute was a mere technicality, not affecting the result of the election, and not vitiating the election itself.

"VI. That his Honor erred, it is respectfully submitted, in holding that the City Council of the City of Sumter was without authority to grant a franchise to the purchaser of said property without a petition praying that the same be done, signed by two-thirds of the electors of the said City, said error being that the Act of March 14, 1925, fully authorized City Council to make such a grant in connection with the sale of the property.

"VII. That his Honor erred, it is respectfuly, submitted in not holding and finding that the Act of March 14, 1925, authorized the City Council of the City of Sumter, upon the approval of a proposed sale by a majority of the electors, in connection therewith, to grant a franchise for the use of the streets and public places of said City for the furnishing of electric power to the people thereof, for the reason that the said Act of March 14, 1925, expressly and by plan intendment did confer such authority upon said City Council without the filing of any petition on the subject.

"VIII. That his Honor erred in not holding and finding that the provisions of the Act of 1912 (Code, § 4715) could have no effect in considering whether or not the City Council had power and authority to grant the proposed franchise; said error being that the Act of 1912, in so far as it refers to granting franchises for public utilities, is so inconsistent, contradictory, and indefinite in its terms as to be without reasonable meaning, and therefore null and void.

"IX. If it should be held that, before the City Council could grant a franchise for the use of the streets in connec-

tion with said sale, it was necessary to have a petition filed under Section 4715 of the Code of Laws, 1922, then his Honor should have further held that City Council was authorized and empowered to grant said franchise, for the reason that the petitions filed were signed by more than two-thirds of the qualified electors of the City of Sumter, and a majority of the petitioners were in favor of the granting of such franchise, and his Honor erred in not so holding.

"X. That his Honor erred, it is respectfully submitted, in not decreeing that the City of Sumter was entitled to specific performance by the Yadkin River Power Company of the contract between the City of Sumter and said company, dated September 23, 1925, for the reason that it appeared that the City of Sumter had duly carried out its part of said contract and was duly authorized and empowered to make the conveyance and grant the franchise referred to in the pleadings herein."

*Messrs. A. S. Harby, Geo. E. Dargan* and *Lee & Moise,* for appellants, cite: *Act of Legislature to relate to one subject expressed in title:* Const. 1895, Art. III, Sec. 17. *Cities authorized to sell municipal light and ice plants:* 34 Stat., 155. *Every presumption to be indulged in favor of constitutionality of Act:* 129 S. C., 171; 123 S. E., 653; 122 S. C., 158; 115 S. E., 202; Cooley's Const. Lim., 6th Ed., 216. *Where title of Act states the subject generally:* 129 S. C., 171; 123 S. E., 651; 103 S. C., 10; 87 S. E., 421; 83 S. C., 481; 30 S. C., 1; 23 S. C., 427; 16 S. C., 47. *Substitution of "or" for "and" to aid construction of Act:* 1 Brev., 318; 1 Bail., 427; Cheves Eq., 80; 1 Speer, 258. *Cities may acquire ice and light plants:* Const. 1895, Art. VIII, Sec. 5; Civ. Code, 1925, Sec. 4425. *Court will adopt construction of statute rendering it constitutional where reasonable:* 258 U. S., 204; 66 L. Ed., 566; 250 U. S., 118; 63 L. Ed., 886. *General Acts:* 66 S. C., 219; 64 S. C., 194.

*Cases distinguished:* 124 S. C., 483; 117 S. E., 722; 97 S. E., 512. *Incorporation of other papers by reference:* 122 S. C., 158; 115 S. E., 202; 1 N. & McC., 381; 8 Rich., 315. *Validity of election not affected by mere irregularities:* 20 C. J., 181. *Sufficiency of notices of election:* 116 S. E., 104; 79 S. C., 414; 60 S. E., 961; 73 S. C., 150; 20 C. J., 96 and 99. *Implied powers of municipalities:* 92 S. C., 127; 78 S. C., 348; 73 S. C., 83. *Franchise accepted becomes contract:* 92 S. C., 127; 235 U. S., 179; 59 L. Ed., 184; 283 F., 931; 12 R. C. L., 179; 26 C. J., 1022. *Solution of ambiguities in Act by reference to former Acts:* 95 S. C., 104; 79 S. E., 193; 175 U. S., 414; 44 L. Ed., 219. *Construing two Acts together:* 92 S. C., 393; 24 S. C., 211. *Court to give Act literal interpretation where unambiguous:* 99 S. C., 218; 82 S. E., 1048. *City of Sumter empowered to grant franchise to public service corporations*: 283 F., 931. *Case distinguished:* 211 U. S., 273. *Legislature may delegate power to regulate rates:* 255 U. S., 539.

*Messrs. D. W. Robinson, L. D. Jennings, H. C. Haynsworth, H. D. Moise, M. W. Seabrook, Geo. D. Shore, Jr.,* and *A. S. Merrimon,* for respondent, cite: *Act of Legislature to relate to one subject expressed in title:* Const. 1895, Art. III, Sec. 17. *Certain special laws prohibited:* Const. 1895, Art. III, Sec. 34. *Organization and classification of municipal corporations:* Const. 1895, Art. VIII, Sec. 1. *Act authorizing sale of light and ice plants unconstitutional:* 129 S. C., 177; 123 S. E., 651; 124 S. C., 488; 117 S. E., 722; 116 S. C., 195; 107 S. E., 476. *Words employed by Legislature to be defined in popular sense:* 105 S. C., 188; 89 S. E., 225; 36 Cyc., 1128. *"Towns" and "Cities":* Civ. Code, 1922, Sec. 4557. *Legislature may not enact statute applicable to one town only under guise of general statute:* 111 S. C., 221; 97 S. E., 512; 109 S. C., 7; 95 S. E., 123; 73 S. C., 196; 52 S. E., 960; 66 S. C., 221; 64 S. C., 250; 62 S. C., 250; 52 S. E., 960. *Classification for purposes of legislation must be reasonable:* 132 S.

C., 248; 128 S. E., 172; 99 S. C., 37; 83 S. E., 594; 93 A. S. R., 111. *Whether a general law may be made applicable is judicial question:* 66 S. C., 223. *Sumter given powers not enjoyed by similar corporations:* 114 S. C., 121; 103 S. E., 83; 105 S. C., 185. *City deriving authority from a statute cannot deny validity of the statute:* 78 S. C., 352. *Same rejection of part of statute:* 109 S. C., 7; 73 S. C., 197; 59 S. C., 113. *Statute to be given reasonable interpreation:* 132 S. C., 272; 128 S. E., 360. *Authority to grant franchise strictly construed:* 92 S. C., 130; 73 S. C., 89; 142 N. W., 491; L. R. A., 1915-F, 247; 238 U. S., 180; 59 L. Ed. 1260; 211 U. S. 273; 28 Cyc., 866. *Municipality has only such powers as expressly or by necessary implication given:* 73 S. C., 89; 59 S. C., 403; 42 S. C., 298; 35 S. C., 14; 23 S. C., 523; 12 S. C., 82. *Repeal of statutes by implication:* 39 S. C., 89; 30 S. C., 409; 14 S. C., 169; 14 Rich. L., 251; 186 N. C., 719; 120 S. E., 450; 185 N. C., 674; 116 S. E., 561; 27 Va., 612; 105 S. E., 127; 94 W. Va., 591; 119 S. E., 808; 90 W. Va., 105; 110 S. E., 482; 154 Ga., 519; 114 S. E., 899. *Construing general and special* Acts together: 116 S. C., 332; 108 S. E. 84. *Franchise accepted becomes contract:* 130 S. C., 127; 125 S. E., 295; 114 S. C., 77; 103 S. E., 149. *Election not canvassed by Commissioners of Election:* 23 S. C., 524. *Action properly brought by taxpayers and property holders:* 97 S. C., 5; 73 S. C., 411; 62 S. C., 413; 44 S. C., 277; 33 S. C., 21; 101 U. S., 609; 25 L. Ed., 1071; 4 Dillon on Mun. Corp., 5th Ed., Secs. 1579, 1580, 1581, 1583; 5 McQuillan on Munn. Corp., Sec. 2575; 8 McQuillan Mun. Corp., Supp., Sec. 2575. *Taxpayers participating in election not estopped to contest its legality:* 97 S. C., 6; 81 S. E., 959; 78 S. C., 471; 73 S. C., 101.

October 13, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This appeal is taken from an order of his Honor, Judge Wilson, granting a permanent injunction against the City of Sumter and its Council, and denying relief to the said City as against the Yadkin River Power Company, one of the defendants.

It is necessary to give a brief history of the controversy involved in order that the proceedings had by the parties to this suit may be understood.

The City of Sumter has for several years owned its electric power and lighting plant and ice plant, but decided to make sale of this property as allowed under an Act of the Legislature of 1925. On September 23, 1925, the Yadkin River Power Company, a North Carolina corporation, made an offer to the City to purchase the property; this offer being made in the form of a contract, and conditioned upon the result of an election to be held on the question of the proposed sale. Among other things, the contract provided that the power company should pay to the City $625,000 cash for the property; that it should construct and operate a hydro-electric transmission line into the City, and should furnish the City and its people with electric power and lights, and, for that purpose, should be granted a 60-year non-exclusive franchise.

In order to determine the will of the people on this question, an election was held, after notice, on November 17, 1925. At this election 349 votes were cast in favor of the sale and 303 against it. Pursuant to this election, the City, in accordance with the contract, prepared a conveyance of the property and the franchise and tendered same to the power company, which, however, refused to accept and pay for same, on the ground that it doubted the power and authority of the City Council to make the conveyance and to grant the franchise.

This action is a consolidation of two proceedings: On the 16th day of December, 1925, an action was commenced by the respondents, as taxpayers and qualified electors of

the City to enjoin the City and its Council from making the conveyance and granting the franchise. A controversy without action was instituted between the City of Sumter and the Yadkin River Power Company, on December 18, 1925, whereby it was sought to be determined by a decree of the Court whether or not the City Council had the power and authority to make the conveyance and to grant the franchise. By agreement of counsel, the two proceedings were, in effect, consolidated, and were heard by Judge Wilson on January 5, 1926. Judge Wilson, by his order, decreed:

"This cause comes on before me for hearing at my chambers at Manning, S. C., under the stipulation of all parties herto filed in the record. After hearing argument, and it appearing to the Court that the City of Sumter, acting through its Council, has not the authority or power to grant the franchise, and make the conveyance referred to in the pleadings, it is ordered, adjudged, and decreed that the temporary restraining order herein be, and is hereby, made permanent. It is further ordered, adjudged, and decreed that, inasmuch as the conveyance and franchise tendered the Yadkin River Power Company by the City of Sumter were unauthorized, the City of Sumter is not entitled to any relief as against Yadkin River Power Company."

From this decree the City of Sumter, and its Council appeal to this Court by a number of exceptions which will be reported. We shall not consider these exceptions *seriatim,* but shall discuss by topics the questions which they raise.

In 1925, the State Legislature passed the following Act, which was approved by the Governor on the 14th day of March, 1925 (34 St. at Large, p. 155):

"An Act to Authorize Cities to Sell and Dispose of Lighting and Ice Plants.

"Section 1. *Special Elections in Cities upon Sale of Electric or Ice Plants.*—Be it enacted by the General Assembly

of the State of South Carolina: Should the City Council, or any board controlling the same, of any city in this State, which owns its electric light plant and ice plant, at any time receive an offer for such electric light plant, or ice plant, either or both, of said city, the said City Council, or any board controlling the same, is hereby authorized and empowered to order a special election in said city for the purpose of determining whether or not the said offer shall be accepted.

"Sec. *2. Notice of Election.*—In the event such election be ordered, four weeks' notice thereof shall be given by publication of the same in a newspaper of general circulation in such city, once in each week for four weeks preceding the date of such election; the said notice to contain, in substance, the terms of the offer for said property.

"Sec. 3. *Conduct of Election—Electors.*—The said City Council, or any board controlling the same, shall conduct the said election, appoint managers therefor, and canvass and declare the result thereof, in the manner now provided by law in reference to general elections in said city, and all qualified electors of said city registered at the last general election therein, and all persons who have since become qualified electors, shall be entitled to vote in the said election.

"Sec. 4. *Registration.*—For said election, the city registration books shall be opened three weeks previous thereto, and remain open for one week, for the purpose of registering all persons who shall have become qualified electors since the last election in said city.

"Sec. 5. *Effect of Vote in Favor of Sales.*—That in the event the result of said election is in favor of the acceptance of the offer so submitted to the people, the City Council, or any board controlling same, of such city is hereby authorized, empowered and directed to accept the same, and complete the sale by the conveyance to the purchaser of the property purchased and to execute and deliver proper deeds of conveyance therefor.

"Sec. 6. *Contract for Operation in Event of Sale—Rates.*
—In connection with such sale, such City Council, or any
board controlling the same, is further authorized and em-
powered to make and enter into an agreement with the pur-
chaser or purchasers for the operation of the property so
purchased, and the furnishing to the people of the said city
electric current or ice, or both, as the case may be, and to fix
maximum rates therefor, during such period as may then
be agreed upon.

"Sec. 7. *Security May be Required of Proposed Purcha-
ser.*—Prior to the ordering of such election, such City
Council, or any board controlling the same, is authorized
to take from the proposed purchaser or purchasers such se-
curity as it may deem sufficient, for the performance of
the offer of purchase in the event of its acceptance.

"Sec. 8. All Acts or parts of Acts inconsistent with this
Act are hereby repealed.

"Sec. 9. This Acts shall take effect immediately upon
its approval by the Governor."

The respondents attack the constitutionality of the
Act on several grounds. This Court has repeatedly
held, in line with general authority, that, in order
to declare a statute unconstitutional, its invalidity should be
shown beyond a reasonable doubt, and that every presump-
tion must be indulged in favor of the constitutionality of
the Act. *Poulnot v. Cantwell,* 129 S. C., 171; 123 S. E.,
653. *Battle v. Willcox,* 128 S. C., 500; 122 S. E., 516.
*Santee Mills v. Query,* 122 S. C., 158; 115 S. E., 202.
*Powell v. Hargrove* (S. C.), 134 S. E., 380.

It is contended, in the first place, that the Act is un-
constitutional because it does not "relate to but one
subject and that  *  *  *  expressed in the title."
Section 17 of Article 3 of the Constitution, which the re-
spondents claim the Act in question violates, provides:

"Every Act or Resolution having the force of law shall

relate to but one subject, and that shall be expressed in the title."

In 26 Am. & Eng. Enc. of Law (2d Ed.), 574, we find:

"This constitutional requirement should not be enforced in any narrow or technical spirit. It was introduced to prevent certain abuses, and it should be reasonably and liberally construed on the one hand so as to guard against these abuses, and on the other hand so as not to embarrass or obstruct needed legislation. The statute should be upheld, if possible, doubtful cases being resolved in its favor, and, to justify the Court in declaring it in violation of the constitutional inhibition, the objection must be serious and the conflict between the statute and the Constitution plain and unmistakable."

In 36 Cyc., 1018, we find the following:

"The restriction requiring the subject of an Act to be expressed in its title should be reasonably construed, considering substance rather than form, to require the expression in the title of the general object but not the details or incidents, or means of affecting the object sought and to include the subject and not the purpose of the Act and the reasons which brought about the enactment of it by the Legislature."

In 25 R. C. L., at page 838, it is said:

"This limitation on the exercise of the legislative power in the enactment of laws is. not exempt from the general rule that it is only a clear violation of the Constitution which will justify the Courts in overruling the legislative will. Every legislative Act is presumed to be constitutional, and every intendment must be indulged by the Courts in favor of its validity. The limitation must be liberally construed with a view to upholding legislation. The objection should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the ground that it em-

braces more than one subject or object, or, if it embraces but one subject or object, that it is not sufficiently expressed by the title. Where, after having applied the general principles governing the construction of constitutional provisions, a Court is still in doubt as to the constitutionality of an Act, it should sustain the same."

In *Verner v. Muller,* 89 S. C., 117; 71 S. E., 654, we find:

"The mandate of the Constitution is complied with if the title states the general subject of legislation, and the provisions in the body of the Act are germane thereto as means to accomplish the objects expressed in the title. *Conner v. Railroad,* 23 S. C., 327. *State v. O'Day,* 74 S. C., 448; 54 S. E., 607."

In *Connor v. Green Pond Railroad Co.,* 23 S. C., 427, this Court said:

"As we have said in *Charleston v. Oliver,* 16 S. C., 56, upon the authority of Mr. Justice Cooley, 'there has been, and ought to be, a general disposition to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construction.' Hence, when a question, under this clause of the Constitution, is presented for adjudication, we are bound to take a liberal and enlarged view, and if practicable bring the legislation which is assailed as unconstitutional within the limits prescribed by the Supreme law of the land."

This controlling principle of construction is that stated in *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421, and quoted with approval in *Spartanburg County v. Miller,* 135 S. C., 348; 132 S. E., 673:

"When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the Act without violating this

provision of the Constitution. *State v. O'Day,* 74 S. C., 449; 54 S. E., 607. *Aycock-Little Co. v. Railway,* 76 S. C., 331; 57 S. E., 27. *Johnson v. Commissioners,* 97 S. C., 212; 81 S. E., 502."

Keeping in mind these general principles of construction, as laid down by the authorities cited, we turn to an examination of the Act itself. The title of the Act is: "An Act to authorize cities to sell and dispose of lighting and ice plants." Section 6 of the Act provides that the city may enter into, in connection with such sale, an agreement with the purchaser or purchasers to operate the property purchased and to funish to the people of the city electic current and ice or both and to fix rates therefor, during such period as may be agreed upon.

The respondents contend that the Act purports by its heading to be an Act authorizing cities to sell and dispose of lighting and ice plants, that it does not, by its head or title, undertake to authorize the making of contracts for the operation of such plants, and that it does not purport, by its title, to authorize the fixing of rates for electric current or ice.

In the present case, as in all cases, we must look to the wording of the title and to the provisions of the Act to determine whether the Act has but one general subject, "expressed in the title," and whether the provisions embodied in the Act are germane to the general subject.

Indubitably, the purpose of the ownership of an electric power and lighting plant and ice plant by a city is to furnish the people of the city with electric power, light, and ice. It is entirely reasonable to suppose, therefore, that the authorities of a city, if they should make sale of such plant or plants, would make provision for the immediate necessities of the people of the city in the matters of power, light, and ice. It is difficult to see how this could be done in a more appropriate or effective way than through the making of a contract between the city and the purchaser

for the furnishing of these necessities to the people. And it is to be observed that in this case the contract specifically provides that the rates fixed therein shall at all times· be subject to regulation by the properly constituted state regulatory authorities. In addition, the making of such a contract by the city with the purchaser or purchasers doubtless would operate as an inducement to the purchaser for making the contract of purchase. The connection between the sale of such plant or plants by a city and the making of a contract for furnishing these necessities to the people is so close and manifest as to appeal to one's natural reason. No doubt the Legislature recognized and contemplated these conditions when it passed the act. It is apparent that the making of a contract by the city with the purchaser of its power and lighting plant and ice plant for the furnishing of power, light, and ice to the people of the city is germane to the sale of such plant or plants, and therefore that the provision in the act for such contract is not in any way foreign to nor independent of nor inconsisent with the title of the act, but is in fact apposite and germane thereto.

The respondents further contend that the Act of 1925 is violative of the Constitution, in that it is special legislation "intended to apply only to the city of Sumter, which was the only city in the State of South Carolina owning and operating an ice plant in connection with its electric light and· current plant. And the purpose to enact such special law is not disclosed in the title."

In 25 R. C. L., 815, we find:

"A law is general in the constitutional sense which applies to and operates uniformly on all members of any class of persons, places, or things requiring legislation peculiar to itself in matters covered by the law."

In *State v. Hammond,* 66 S. C., 219; 44 S. E., 797, this Court said:

"With respect to territory, a law is general when it applies to the whole state, and local when it applies to only a part

of the state. With respect to persons and things, a law is general when it applies uniformly to all persons or things within a proper class, and special when it applies to only one or more individuals or things belonging to such class."

In *State v. Berkeley,* 64 S. C., 194; 41 S. E., 961, the constitutionality of a law in reference to the drawing of the juries in counties containing a city or cites of more than 40,000 inhabitants was attacked on the ground that Charleston County was the only county in the state at that time coming within the provisions of the Act. The Court said:

"Now as to the question, Is it constitutional? By its terms it is a genral act. Its application is to all counties in the state which are blessed with a city or cities of 40,000 inhabitants. Laws are not enacted alone for the immediate circumstances of a state. It it the part of wisdom to look ahead; to lay foundations upon which its people may expect in the future to build. * * * The mistake, as I take it, made by the appellant, is in assuming that, because the county of Charleston happens to fill the requirements while just now no other county in the state does so, that no other counties in the future will do so. If it was an impossibility or an improbability that other counties would do so, there then might be some good ground for calling this a local law. * * * The act is general in its terms. So I hold the Act in question constitutional, and these grounds of appeal are overruled."

So, in the present case, the language of the statute, being general in its terms, and it not appearing impossible or improbable that other cities will hereafter come within its provisions, the Act cannot be classed as special legislation.

We may add, in passing, that it now appears that at the time of the passage of the Act there were two cities in South Carolina, Sumter and Summerville, that owned their eletric power and lighting plants and ice plants instead of one, Sumter, as originally contended by the respondents. However, the number of cities coming within the provisions of

the Act at the time of its passage is immaterial, since the Act, as seen, applies, not only to all cities that 'at the time of its passage were within its provisions, but also to all cities that might thereafter come within the class defined while the Act remains in force.

The respondents, in their supplemental complaint, say:

"If the Act itself is valid, then the attempted acts and action of the city and city council are invalid, null, and void, in that:

"(1) The notice of election did not contain, in substance, the terms of the contract of sale, as required by the Act itself.

"(2) The notice of such sale did not contain a statement, in substance, of any purpose or intention on the part of said city or city council to contract for light and power at a fixed price for a term of five years; said publication did not contain, in substance, a notice that the said city and city council were to circulate a petition for or grant a franchise in the streets, sidewalks, and alleys of said city to the purchaser for a term of 60 years; in fact, the said notice did not contain, in substance, as the plaintiffs are informed and believe, from an inspection of the contract itself, as contained in a newspaper account of same, any of the terms of said contract, which were numerous, except the purchase price and the physical property to be sold.

"Plaintiffs therefore allege that the election attempted to be held by defendants was in fact null and void, and all acts in pursuance thereof and which they were attempting to perform under said alleged contract, or said election, or both, are null and void."

The pertinent part of the notice of the election was as follows:

"Notice is hereby given that, pursuant to a resolution adopted by the city council of the city of Sumter on the 14th day of October, 1925, a special election will be held

* * * in the city of Sumter, on the 17th day of November, 1925, for the purpose of submitting to the qualified registered electors of said city the question whether it shall sell, convey, and transfer to Yadkin River Power Company and its successors and assigns its electric generating plant and electric light and power distribution system (except the white way street lighting system) and its ice manufacturing plant and system, together with the lands, buildings, right of way, machinery, tools, equipment, and all other property constituting a part of said plants or systems, or owned and used or held for use by the city in connection therewith, at and for the price of six hundred and twenty-five thousand dollars ($625,000) cash, on the terms and conditions stipulated in an agreement between the said Yadkin River Power Company and the City of Sumter, dated the 23d of September, 1925, and now on file with the clerk of the city."

It is not claimed by the respondents that there was any fraud in the election or that a majority of those voting did not cast their ballots in favor of the sale of the property in question. The objection goes only to the alleged insufficiency of the notice of election, which notice, it is contended, did not state, in substance, the terms of the offer, as required by the provisions of the Act. In conformity with this proposition it is maintained that the notice was insufficient, even though it contained a reference to the contract, embodying all the terms of the offer, filed in the office of the city clerk.

In A. & E. Ency., of Law (2d Ed.), 631, we find: "When the Statute requires the notice to state the purpose for which the election is to be held, the requirement must be substantially complied with, or the election will be invalid, unless it is one which would not be vitiated by the entire want of any notice. The same is true of other matters required by the Statute to be stated in the notice. Notice of an election for a particular purpose will not authorize an election for any other purpose. A

substantial compliance with the Statute is sufficient; and the notice need not state matters that will be implied."

In 20 C. J., 96, the rule is thus stated:

"The test for determining whether an election is invalidated for want of a notice prescribed by Statute, is whether, on the one· hand, the voters generally have had knowledge of the election and full opportunity to express their will, or whether, on the other hand, the omission has resulted in depriving a sufficient number of electors of the opportunity to exercise their franchise to change the result of the election.  *  *  *  But· failure to give the statutory notice will not of itself invalidate a special election if the time of holding the same is fixed by law, or where it appears that electors were in fact informed of the time, place, and purpose, of the election and generally voted for the candidates or upon the question submitted."

The case of *Railroad Co. v. Pinckney,* 74 Ill., 277, seems to be in point.  This was a case in which Pinckney et al., attempted to have the town of Mt. Morris and its officers enjoined from issuing bonds to the railroad company in the sum of $75,000; one of the grounds being that the vote in favor of this donation was void, because the notice of election and the petition were defective.  The objection to the notice of election was that it failed to state the rate that the bonds were to bear or the time when they became due. On this point, the Court said:

"The voters of the town of Mt. Morris are told by this notice that a petition has been filed in the town clerk's office, signed by 20 legal voters of the town.  If there was a bare possibility of any voter not knowing by the notice how long these bonds were to run or their rate of interest, he is informed by the notice that the information is in the office of a public officer of the town, and all he has to do in order to obtain the required information is to call on that officer. *  *  *  We do not think there can be a pretense for a single voter being misled by the notice.  The petition is referred

to as being on file, and was thus subject to inspection by all the voters of the town. We are of opinion that the notice, in connection with the petition, is sufficient."

Likewise, we think that in this case the notice, in connection with the contract of sale filed in the city clerk's office, to which attention was called in the notice, was sufficient, and complied with the requirements of the Statute. The Act does not require that the notice should set forth the offer in all of its details, but only that it should give the terms in substance. The notice stated the principal terms of the offer and directed the attention of all citizens and voters of the city to the fact that the contract embodying all its terms was on file in the city clerk's office, and this was sufficient to advise every voter who desired fuller and more complete information to call at that office, where such information could be obtained by reference to the contract itself.

It also seems that for some time prior to the election the matter of the proposed sale of the property was thoroughly discussed in the newspapers of the city of Sumter and in mass meetings of the citizens called for that purpose. It does not appear that any one was misled as to the proposition to be voted on; there was no contention of fraud or trickery of any kind; and it appears that all qualified electors who desired to vote were allowed to do so. There was no dispute as to the outcome of the election, and, if there were any irregularities, it is not contended that they affected the result in any way. See *State v. State Board of Canvasssers,* 79 S. C., 414; 60 S. E., 967.

The respondents contend further that the Act of 1925, neither directly nor by implication, gives the city council authority to grant to the purchasers of the electric power and lighting plant a franchise for the use of the streets and public places in the operation of the plant so purchased.

As we have already poined out, the Act itself, by its

provisions, specifically authorizes the city council or controlling board to enter into a contract with the purchaser of such power and lighting plant to furnish power and current to the city and its people and to fix rates for such power and current so furnished. We have held that these provisions of the Act are cognate and germane to the general purpose of the Act as expressed in its title. It follows that, in order that the purchaser may comply with such contract in the operation of the producing plant, it is necessary for him to have the right to use the streets and public places for erecting and maintaining his poles, lines, etc. This being true, the city or controlling board making such sale and contract as authorized by the Act itself has implied power and authority under the Act to grant to the purchaser a franchise for such purposes.

Counsel in the case argued at length regarding the provisions of the Act of 1912 for the granting of a franchise by a city. Section 30 of this Act (Section 4715, Code, Vol. 3, 1922) requires, for teh granting of such a franchise by the City of Sumter, the filing of a petition by two-thirds of the qualified electors of that city. The Act of 1925, which applies to cities owning their electric power and lighting plants and ice plants, contains a clause repealing all acts or parts of acts inconsistent with its provisions and contains no requirements for the filing of a petition by the qualified electors. In so far as the Act of 1925 deals, either expressly or impliedly, with the granting of a franchise for the operation of an electric power and lighting plant, it renders unnecessary for the granting of a franchise the filing of a petition by two-thirds of the qualified electors. To the extent, therefore, that it becomes necessary, in order to give force and effect to the Act of 1925, this Act repeals so much of the Act of 1912 as is inconsisent with its own provisions, and therefore is amendatory to that Act. The same reasoning applies to any other prior legislation relating to the same subject.

In the case of *Burriss v. Brock,* although the Act being considered by the Court contained no repealing clause, the Court held that it necessarily had the effect of repealing so much of a prior enactment as was inconsistent with its own provisions. See *Burriss v. Brock,* 95 S. C., 104; 79 S. E., 193.

The respondents claim that, if the Act of 1925 gives the authority to grant the power company a franchise in the streets of Sumter for the purpose of operating the property in question, it must be construed as amendatory to the charter of the city of Sumter in that respect, and that a city's charter cannot be amended by special Act, and also that it must necessarily be construed as impliedly repealing the general provisions of law applicable to the granting of such franchises. What we have already said in reference to the general and amendatory nature of the Act of 1925 fully answers these contentions.

The respondents raised the question, but for the first time, in their argument, that, even conceding that the power to grant some franchise is necessarily implied as essential to the sale and operation of a power and lighting plant, the franchise actually sought to be granted is broader than the authorization. An examination of the franchise proposed to be granted, as set out in the contract, fails to support this contention. The franchise appears entirely reasonable as incident to the purchase and operation of the plant.

From the foregoing, this Court is of the opinion, and so holds, that the Act in question of March 14, 1925, is in no way repugnant to any of the provisions of the Constitution; that the notice of election held thereunder in the City of Sumter on November 17, 1925, was a sufficient compliance with the terms of the said Act, and that the said election was legal and valid; that the city council of the said City of Sumter is legally empowered and authorized to execute and deliver to the Yadkin River Power Company the conveyance of the property in question and to grant

to the said company the proposed franchise; and that the said city council of the City of Sumter having such power and authority to carry out the terms of the contract between it and the Yadkin River Power Company, the said Yadkin River Power Company should be required to specifically perform the contract. It follows that appellants' exceptions must be sustained.

It is therefore the judgment of this Court that the judgment of the lower Court be reversed; that the injunction granted be dissolved, and the petition of the petitoners herein dismissed; that the said City of Sumter and the city council of said city have judgment against the Yadkin River Power Company, on the controversy without action, for the specific performance of its contract with the said City of Sumter; and that this case be remanded to the Circuit Court, with instructions that the views and holdings of this Court in relation thereto be carried out.

MESSRS. JUSTICES WATTS, COTHRAN and BLEASE concur.
MR. CHIEF JUSTICE GARY did not participate.