712 S.E.2d 440

**Carolyn COLE and Windy Price, Appellants,**

v.

**TOWN OF ATLANTIC BEACH ELECTION COMMISSION, Respondent.**

**Josephine Isom and Charlene Taylor, Intervenors.**

No. 26996.

Supreme Court of South Carolina.

Heard April 5, 2011.

Decided July 7, 2011.

Rehearing Denied July 22, 2011.

Charles B. Jordan, Jr., of Thompson & Henry, PA, of Myrtle Beach, for Appellants.

Charles L.A. Terreni, of Columbia, John C. Zilinsky, of Zilinsky & Gordon, LLC, of Conway, and Malinda McAleer Pennington, of Greenville, for Respondent.

John M. Leiter and Lee Ann W. Rice, both of Myrtle Beach, for Intervenors.

Patricia Bellamy, of Atlantic Beach, Pro Se, for Amicus Curiae.

Chief Justice TOAL.

This case involves a dispute over the results of a town council election in Atlantic Beach, South Carolina, held on

November 3, 2009. Carolyn Cole and Windy Price (collectively, Appellants) appeal the circuit court order affirming the Town of Atlantic Beach Municipal Election Commission's (MEC) decision to de-certify and order a new election for two Atlantic Beach Town Councilmember positions. We reverse.

## FACTS/PROCEDURAL HISTORY

This Court has unfortunately become familiar with the Town of Atlantic Beach's municipal elections, and the disputes that inevitably accompany them.[1] Before framing the procedural particulars of this dispute, an initial explanation of the municipal government structure of Atlantic Beach is instructive. Similarly, an analysis of the issues presented is incomplete without providing the background of events leading up to the election.

The Town of Atlantic Beach employs a council-manager form of government, provided for in title 5, chapter 13 of the South Carolina Code. S.C.Code Ann. § 5–13–10–100 (2004). Under this form of government, the governing body is the municipal council, which is comprised of a mayor, and four, six, or eight councilmembers.[2] *Id.* § 5–13–20(a). This governing body is responsible for appointing three electors as members of the municipal election commission. *Id.* § 5–15–90. The municipal election commission, in turn, has the power to "supervise and conduct all municipal ... elections," *id.* § 5–15–100, and in the case of contested election results, the power to "conduct a hearing on the contest, decide the issues raised," and when a decision is made to invalidate an election, to order a new election. *Id.* § 5–15–130. Therefore, while the mayor

---

1. *See Armstrong v. Atlantic Beach Mun. Election Comm'n,* 380 S.C. 47, 668 S.E.2d 400 (2008) (finding the circuit court erred by ordering the reopening of the filing period for candidacy for mayor because that decision was based on facts not considered by the election commission when it ordered a new election for the parties concerned); *see also Taylor v. Town of Atlantic Beach Election Comm'n,* 363 S.C. 8, 609 S.E.2d 500 (2005) (finding the Municipal Election Commission was not required to state findings of fact and conclusions of law when rendering decisions, and holding that a limited number of ballot secrecy violations did not give rise to a constitutional violation sufficient to set aside the mayoral and town council elections).

2. The Atlantic Beach Town Council is comprised of four at-large council seats.

and town council have the power to appoint the election commissioners, the election commissioners have wide discretion to determine the outcome of contested mayoral and town council elections. Additionally, the town council is charged with the duty of employing a town manager and fixing his salary. *Id.* §§ 5-13-30(1) & -50. At the time of the town council election, Alice Graham (Commissioner Graham), Linda Booker (Commissioner Booker), and Nicole Kenion (Commissioner Kenion) sat on the MEC. Commissioner Booker's husband, William Booker (Town Manager), was the town manager. Intervenors Josephine Isom and Charlene Taylor were incumbent town councilmembers.

At some point in 2009, Price, the head minister of the Atlantic Beach CME church, and Cole, former Atlantic Beach town manager, decided to run as candidates in the upcoming town council election. Prior to their attempts to establish residency in Atlantic Beach, Price lived in North Myrtle Beach and Cole lived in Florida. On August 15, 2009, Price signed a lease agreement with Cole to move into an apartment building in Atlantic Beach, owned in part by Cole. This property had been designated for demolition in March 2008. The property managers subsequently determined that it was more cost-effective to renovate the building, and Cole wrote to Mr. Booker informing him of that decision. Price's husband, a contractor, began working to renovate the building in August 2009, with plans to move in to the building on September 1. On September 14, 2009, town council, whose members included candidates in the upcoming town council election, Isom and Taylor, passed an ordinance to have this property condemned. On August 29, 2009, Town Manager wrote to Santee Cooper and requested that they turn off the electricity in the building Cole and Price were renovating.

With the plans to move into the apartment building thwarted, Cole and Price moved in with Atlantic Beach resident and former mayor, Retha Pierce. In September 2009, Price changed the address on her driver's license to Pierce's address and obtained a voter registration card for the Atlantic Beach precinct using this address. On September 16, 2009, Commissioner Graham received a letter from Pierce's landlord, Mr. Connie McCullough, stating he did not have a rental agreement with Price and that Pierce's lease agreement prohibited

her from allowing anyone to live with her at his property. In fact, Pierce's lease specifically allowed up to two additional tenants. Appellants allege that Commissioners Graham and Booker and Town Manager sent Mr. McCullough the letter stating Price was not permitted to live at his property, and Mr. McCullough signed the letter upon their request without checking the lease. Mr. McCullough subsequently sent a letter to Commissioner Graham disavowing that letter and corroborating the claim that Commissioner Graham sent him the letter with a request for him to sign.

Price timely filed a Statement of Candidacy for Office of Councilmember with the Town of Atlantic Beach on September 4, 2009. On September 25, 2009,[3] Commissioner Graham informed Price by letter that she would not appear on the election ballot because of her failure to submit a Statement of Economic Interest Form to the State Ethics Commission, and for her failure to meet the residency requirements for candidacy.[4] Thereafter, Appellants Cole and Price campaigned for these seats as write-in candidates.

On November 3, 2009, the Town of Atlantic Beach held an election for the two positions on town council. After the polls closed, there were 39 contested ballots. The MEC held a challenged ballot hearing on November 5, 2009, at 10:00 a.m., after which, 28 of the challenged ballots were accepted. These accepted ballots included those of Price and Cole. At this hearing, the MEC announced the following vote count: Windy Price (64), Carolyn Cole (52), Charlene Taylor (43), Josephine Isom (35), and Paul Curry (5); thus, declaring Carolyn Cole and Windy Price as the duly elected councilmembers for

---

3. Commissioner Graham misdated the letter as October 25, 2009.

4. On September 25th, Price filed a Statement of Economic Interest with the State Ethics Commission. The Statement of Economic Interest form states that the penalty for late filing is a fine of $100 per day, rather than disqualification. On October 1, 2009, Price filed a complaint in circuit court against Commissioners Graham and Booker, Gary Baum of the South Carolina Election Commission, and Atlantic Beach town clerk, Cheryl Pereira, requesting the court to issue a temporary restraining order preventing Defendants from removing her name from the November 3, 2009 town council election ballot. The circuit court dismissed the case on October 26, 2009 for improper service and improper parties, but the court did not file the order until January 20, 2010, well after the election.

Atlantic Beach. The MEC certified these results after the close of the hearing. The deadline for protesting the results of this election, according to section 5–15–130 of the South Carolina Code,[5] occurred at 7:00 p.m. on that same day, November 5, 2009. Candidates Isom. Taylor, and Curry submitted letters protesting the MEC's certification of the election on the afternoon of November 5th.[6]

The MEC conducted a protest hearing on November 7th at 10:00 a.m. and adjourned that meeting, with a motion to continue, at 10:03 a.m., before Appellants arrived. The stated reason for the continuance was to "allow legal counsel to be present" at the hearing.

The MEC conducted and then continued the protest hearing on November 11th, and again on November 20th. At these hearings, the MEC heard testimony concerning the allegations raised in Taylor, Isom, and Curry's letters of protest. In pertinent part, these candidates contested the election of Appellants on the grounds that Appellants failed to meet the residency requirements to run as candidates, they violated absentee voting laws, and voting irregularities merited overturning the election.

At the close of the November 20th hearing, Commissioners Graham and Booker voted to grant Isom and Taylor's petitions for a new election, with Commissioner Kenion voting to deny. On November 30, 2009, Commissioner Kenion filed a dissent explaining the reasons for her vote. On that same day, Appellants appealed the MEC's decision to the circuit court. The MEC did not issue a written order until January 29, 2010.[7] That order summarily found Appellants did not

5. "Within forty-eight hours after the closing of the polls, any candidate may contest the result of the election as reported by the managers by filing a written notice of such contest together with a concise statement of the grounds therefor with the Municipal Election Commission...."

6. Appellants allege Isom and Taylor failed to submit their protest letters before the 7:00 p.m. deadline. Because we decide this case on other grounds, we do not reach this issue.

7. Section 5–15–140 provides that a party aggrieved by a decision of the municipal election commission has ten days after notice of the decision to appeal it to circuit court. *Id.* § 5–15–140 (2004 & Supp.2010).

meet the residency requirements of running for public office in Atlantic Beach, and that voting irregularities and questionable absentee ballots rendered the results of the election doubtful. Thus, the MEC de-certified the election results and ordered a new election. The circuit court judge heard the appeal on May 19, 2010, and issued a Form 4 order that same day affirming the decision of the MEC. The circuit court later granted Isom and Taylor's motions to intervene. This case is before this Court on direct appeal from the circuit court, pursuant to Rule 203(d)(1)(A)(iv), SCACR.

## ISSUES

I. Whether the MEC's failure to comply with the provisions of section 5–15–130 of the South Carolina Code requires this Court to vacate its decision to de-certify and order a new election.

II. Whether sufficient evidence exists in the record to uphold the decision of the MEC.

III. Whether Commissioner Booker should have recused herself from any deliberations concerning the election of town council members.

IV. Whether Intervenors failed to strictly comply with the requirements of section 5–15–130 of the South Carolina Code when protesting the election.

## STANDARD OF REVIEW

"In municipal election cases, this Court reviews the judgment of the circuit court upholding or overturning the decision of a municipal election commission only to correct errors of law." *George v. Mun. Election Comm'n of the City of Charleston*, 335 S.C. 182, 186, 516 S.E.2d 206, 208 (1999). This review only extends to findings of fact when those findings are wholly unsupported by the evidence. *Id.* (citations omitted). "The Court will employ every reasonable presumption to sustain a contested election, and will not set aside an election due to mere irregularities or illegalities

---

Appellants filed their appeal within ten days of the close of the protest hearings, but before the MEC issued a written order.

unless the result is changed or rendered doubtful." *Id.* (citations omitted).

## ANALYSIS

### I. Failure to Comply with Section 5–15–130 of the South Carolina Code

■ Appellants argue this Court should vacate the MEC's decision to de-certify and order a new election because the MEC failed to comply with the requirements of section 5–15–130 of the South Carolina Code, the statute that delineates the procedure for contesting results of a municipal election. We believe Respondent's complete disregard of the provisions of section 5–15–130 was perpetuated by a conscious decision to ignore the will of the voters, and this delay ultimately undermined the legislative purpose behind requiring the expeditious handling of election disputes. Therefore, we agree with Appellants and vacate the decision of the MEC. Accordingly, the MEC's initial certification of the town council election, declaring Appellants Cole and Price as winners, shall be restored.

Section 5–15–130 provides:

Within forty-eight hours after the filing of [a candidates' protest] notice, the Municipal Election Commission shall, after due notice to the parties concerned, conduct a hearing on the contest, decide the issues raised, file its report together with all recorded testimony and exhibits with the clerk of court of the county in which the municipality is situated, notify the parties concerned of the decisions made, and when the decision invalidates the election the council shall order a new election as to the parties concerned.

S.C.Code Ann. § 5–15–130 (1976).

The MEC conducted a protest hearing within forty-eight hours of the candidates filing protests, but that hearing lasted just three minutes and was continued to proceed on November 11, 2009. In fact, the MEC adjourned the November 7th protest hearing before the arrival of Appellants.[8] The MEC held a protest hearing on November 11, 2009, and concluded

---

8. According to testimony at the November 11th hearing, Appellants were not served with formal notice of the hearing, as required by section 5–15–130.

the hearing on November 20, 2009. It did not file a report of the hearing until January 29, 2010—more than two months after the protest hearing adjourned. The MEC did not produce a transcript of the proceedings until March 21, 2010. Price's husband (Mr. Price), by sworn affidavit, informed the circuit court that on November 27, 2009, he contacted the court reporter who transcribed the hearings in an effort to procure the transcript. She informed him that the MEC's attorney told her not to give Mr. Price the transcript and that it would cost him $3,400 to procure it. She also told him she did not plan to file a copy with the town clerk once she completed the transcript and if he wanted a copy, he needed to contact Commissioner Graham. Without an official order from the MEC, and without the transcript of the hearings, on November 30, 2009, Appellants appealed the oral decision of the MEC. *See* S.C.Code Ann. § 5–15–140 (1976) (a party aggrieved by the decision of the municipal election commission has ten days after notice of the decision to appeal it to the circuit court). The MEC contends there was nearly twenty hours of testimony and it was impossible to produce transcription within forty-eight hours. Under normal circumstances, we understand it would be unreasonable to expect the completion of such a transcript within two days. However, we find totally unworthy of belief the MEC's excuse for the delay because as of January 7, 2010, nearly seven weeks after the hearing adjourned, the MEC had yet to order the transcript. Because the circuit court had nothing on which to base its review, the circuit court judge continued the hearing, upon the MEC's request, to May 17, 2010. The circuit court did not file its final order until September 28, 2010. As a result of the MEC's delay tactics, Intervenors Isom and Taylor have remained in their town council seats as incumbents for nearly two additional years, pending the disposition of the election dispute.

 This Court recognizes that perfect compliance with an election statute is, in many cases, unlikely. Therefore, we hesitate to vacate a decision of a municipal election commission based on minor violations of technical requirements. In *George v. Municipal Election Commission of the City of Charleston*, this Court set forth guiding principles for determining whether the provisions of an election statute are

mandatory, or merely directory. 335 S.C. 182, 186, 516 S.E.2d 206, 208 (1999). Generally, courts consider the provisions of election laws mandatory when the statute expressly declares that a particular act is essential to the validity of an election, or when a party seeks enforcement of the law in a direct proceeding before the election takes place. *Id.* In the interest of avoiding the disenfranchisement of voters after an election has taken place, a statute that uses seemingly mandatory terms such as "shall" or "must," will be considered directory if the party seeking enforcement alleges no fraud or if that party fails to prove fraud. *Id.*

> Courts justly consider the main purpose of such law, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end, and, in order not to defeat the general design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud, and have not interfered with a full and fair expression of the voter's choice.

*Id.* (*quoting State ex rel. Parler v. Jennings,* 79 S.C. 414, 419, 60 S.E. 967, 968–69 (1908)). However, courts may deem statutory provisions mandatory after an election when "the provisions substantially affect the free and intelligent casting of a vote, the determination of the results, an essential element of the election, or the fundamental integrity of the election." *Id.* at 187, 516 S.E.2d at 208 (*citing Zbinden v. Bond County Cmty. Unit Sch. Dist. No. 2,* 2 Ill.2d 232, 117 N.E.2d 765, 767 (1954)).

 Section 5–15–130 requires the municipal election commission to take a number of actions within forty-eight hours of the candidates filing protests—conduct a hearing, decide the issues, file a report that includes the transcribed testimony and exhibits with the county clerk, notify the parties of the decision, and order a new election, if necessary. We believe the main purpose of this law is to expeditiously finalize protested municipal elections in the interest of realizing the voters' will and seamlessly transitioning governmental offices. Therefore, insubstantial deviations from these provisions would not ordinarily require this Court to nullify a protest hearing decision. However, in this case, the MEC's startling disregard of the statute in no way merits lenient application of

the statute by this Court. The MEC's delay in ordering the transcript and filing the final order was not just by a few hours, or even days, but by several months. During this time, the parties protesting the election—Isom and Taylor—remained in their town council positions. We believe the delay was a direct attempt by the MEC to interfere with the full and fair expression of the voters' choice. "The Court . . . will not sanction practices which circumvent the plain purposes of the law and open the door to fraud." *May v. Wilson,* 199 S.C. 354, 360, 19 S.E.2d 467, 470 (1942). Therefore, we vacate the MEC's decision to de-certify and order a new election, and conclude that the original certification of the election, declaring Appellants Cole and Price as the winners, should be restored.

## CONCLUSION

In light of our holding in this case, we find it unnecessary to address the additional issues argued by Appellants. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999). However, if this Court were to reach these arguments, this opinion would include facts no less astonishing than those thus far relayed. We accompany this decision with strong admonishment of the MEC and other involved parties, who worked diligently to obstruct the town council election process. The attempts by members of the MEC and the town manager to prevent Cole and Price from establishing residency were deplorable. The manner in which the MEC conducted the protest hearings causes us great concern and makes us question whether future election protests can be properly conducted in Atlantic Beach without direct monitoring by the State Election Commission. Nearly every Atlantic Beach municipal election held in recent history has found its way to this Court. We have grown weary of the shenanigans engaged in by all parties involved in the election process at Atlantic Beach, and will not hesitate to issue sanctions if the election laws of this State continue to be blatantly disregarded. For the forgoing reasons, we vacate the MEC's decision to de-certify the election, and order the original certification of Appellants Cole and Price as winners to be restored. Accordingly, Cole and Price should immediately begin serving in their capacities as town councilmembers

upon issuance of the remittitur in this case. The ruling of the circuit court is

**REVERSED.**

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.